[No. S121676. Mar. 1, 2007.]

ROCHELLE STERLING et al., Plaintiffs and Appellants, v.
LAWRENCE N. TAYLOR et al., Defendants and Respondents.

758

**COUNSEL**

Manatt, Phelps & Phillips, Carl L. Grumer, Craig S. Rutenberg, Jeffrey A. Backhus; Barak Lurie; Law Offices of Dennis C. Tulsiak and Dennis C. Tulsiak for Plaintiffs and Appellants.

June Babiracki Barlow and Neil Kalin for California Association of Realtors as Amicus Curiae on behalf of Plaintiffs and Appellants.

Horvitz & Levy, Lisa Perrochet, Jeremy B. Rosen; Buchalter, Nemer, Fields & Younger, G. Forsythe Bogeaus and Raquel Vallejo for Defendants and Respondents.

Trevor A. Grimm and Paul Gough for Apartment Association of Greater Los Angeles as Amicus Curiae on behalf of Defendants and Respondents.

Arthur Mazirow for Richard A. Lord as Amicus Curiae on behalf of Defendants and Respondents.

**OPINION**

**CORRIGAN, J.**—The statute of frauds provides that certain contracts "are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged . . . ." (Civ. Code, § 1624.) In this case, the Court of Appeal held that a memorandum regarding the sale of several apartment buildings was sufficient to satisfy the statute of frauds. Defendants contend the court improperly considered extrinsic evidence to resolve uncertainties in the terms identifying the seller, the property, and the price.

We reverse, but not because the court consulted extrinsic evidence. Extrinsic evidence has long been held admissible to clarify the terms of a memorandum for purposes of the statute of frauds. Statements to the contrary appear in some cases, but we disapprove them. A memorandum serves only an evidentiary function under the statute. If the writing includes the essential terms of the parties' agreement, there is no bar to the admission of relevant extrinsic evidence to explain or clarify those terms. The memorandum, viewed in light of the evidence, must be sufficient to demonstrate with reasonable certainty the terms to which the parties agreed to be bound. Here, plaintiffs attempt to enforce a price term that lacks the certainty required by the statute of frauds.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In January 2000, defendant Lawrence N. Taylor and plaintiff Donald Sterling discussed the sale of three apartment buildings in Santa Monica owned by the Santa Monica Collection partnership (SMC). Defendant was a general partner in SMC. Plaintiff and defendant, both experienced real estate investors, met on March 13, 2000, and discussed a series of transactions including the purchase of the SMC properties. At this meeting, plaintiff drafted a handwritten memorandum entitled "Contract for Sale of Real Property."[1]

---

[1] The memorandum may be rendered in typescript as follows:

"Contract for Sale of Real Property"

"Seller Larry Taylor, & Christina Development, and Buyer Donald T. Sterling, Trustee of Sterling Family Trust, agree to the following terms and conditions;

|  |  |  |  |
|---|---|---|---|
|  | D.P. |  |  |
| "1. Fox Plaza | 3 000,000 [sic] |  |  |
|  | 3,000,000 | (cash to loan) | Price $31,000,000 |
|  |  |  |  |
| "2. Barrington Bldg. | 2,000,000 D.P. |  |  |
|  | 6,000,000 D.P. |  | Price $12,700,000 |

"3. 808 4th St.   }    approx 10.468 X gross income
"4. 843 4th St.   }         income
"5. 1251 14th St.}    estimated 1.600.000,   Price $16,750.$^{00}$
                     escrow 30 days. Brentwood scrow. [Sic.]

        "Cash to loan.
"Contract to be completed within 30 days.

"Date 3/13/2000          Seller _____
                         "Buyer      DTS"

In the handwritten original, a single bracket links items 3, 4, and 5 (the SMC properties) to the notations on the right. In those notations, though the word "income" appears on a separate line above "estimated 1.600.000," it is closer to the line below it than to the line above it, and the parties agree the intended phrasing was "estimated income 1.600.000."

The memorandum encompasses the sale of five properties; only the SMC properties are involved here. They are identified in the memorandum as "808 4th St.," "843 4th St.," and "1251 14th St.," with an aggregate price term of "approx 10.468 X gross income[,] estimated income 1.600.000, <u>Price</u> <u>$16,750.$^{00}$</u>." Although defendant had given plaintiff rent rolls showing the income from the properties, neither man brought these documents to the March 13 meeting. Plaintiff dated and initialed the memorandum as "Buyer," but the line he provided for "Seller" was left blank. Plaintiff contends the omission was inadvertent. Defendant, however, asserts he did not sign the document because he needed approval from a majority of SMC's limited partners.

On March 15, 2000, plaintiff wrote to defendant, referring to the properties by street address only, and stating "[t]his letter will confirm our contract of sale of the above buildings." The letter discussed deposits plaintiff had given to defendant, and noted "our agreement that the depreciation allocation and tax benefits will be given to me no later than April 1, 2000, since I now have equitable tittle [*sic*]." Price terms were not mentioned. Both parties signed the letter, defendant beneath the handwritten notation "Agreed, Accepted, & Approved."

Plaintiff claims the March 13 memorandum was attached to the March 15 letter, which defendant annotated and signed in his presence. Defendant insists nothing was attached to the March 15 letter, which he did not sign until March 30. According to defendant, his signature reflected only an accommodation to acknowledge the deposits he had received from plaintiff.

On April 4, 2000, defendant sent plaintiff three formal purchase agreements with escrow instructions, identifying the properties by their legal descriptions. SMC was named as the seller and the Sterling Family Trust as the buyer. The price terms totalled $16,750,000. Defendant signed the agreements as a general partner of SMC. Plaintiff refused to sign. Defendant claims plaintiff telephoned on April 28, saying the purchase price was unacceptable. Plaintiff asserts that after reviewing the rent rolls, he determined the actual rental income from the SMC buildings was $1,375,404, not $1,600,000 as estimated on the March 13 memorandum. Plaintiff claims he tried to have defendant correct the escrow instructions, but defendant did not return his calls. Plaintiff wanted to lower the price to $14,404,841, based on the actual rental income figure and the 10.468 multiplier noted in the memorandum.[2]

---

The parties do not explain the association between defendant and Christina Development, or the inclusion of Christina Development in the memorandum.

[2] The formula does not yield plaintiff's modified price: $1,375,404 multiplied by 10.468 is $14,397,729. In a declaration filed in the trial court, plaintiff explained that he made two

Plaintiff did not ask for the $16,750.00 purchase price stated in the memorandum. He admits that he "accidentally left off one zero" when he wrote down that figure. Defendant also acknowledges that the price recorded on the memorandum was meant to be $16,750,000.[3]

Defendant returned plaintiff's uncashed deposit checks on May 23. The parties conducted further negotiations in December 2000 and January 2001. Defendant provided additional rent rolls, but no agreement was reached.

In March 2001 the trustees of the Sterling Family Trust sued Taylor, SMC, and related entities, alleging breach of a written contract to sell the properties for a total price of $14,404,841. The March 13 memorandum and the March 15 letter were attached to the complaint as the "Purchase Agreement." The complaint included causes of action for breach of the implied covenant of good faith and fair dealing, specific performance, declaratory relief, an accounting, intentional misrepresentation, and imposition of a constructive trust.

Defendants sought summary judgment, claiming that no contract was formed, the alleged contract violated the statute of frauds, and plaintiffs could not prove fraud. Defendants contended the memorandum and letter did not satisfy the statute because they established no agreement on price, failed to sufficiently identify either the contracting parties or the properties, and were not signed by Taylor and Christina Development. The trial court granted summary judgment. It ruled that the price term was too uncertain to be enforced and the writings did not comply with the statute of frauds. The court also concluded that the undisputed facts disclosed neither a fraudulent intent on defendant's part nor damages to plaintiff, thus foreclosing the misrepresentation claim.

The Court of Appeal reversed as to the contract causes of action, but remanded for entry of summary adjudication in defendants' favor on the fraud claim. The court held that Taylor's name and signature on the writings submitted by plaintiffs satisfied the statute of frauds. It also deemed the identification of the properties by street address sufficient, in light of extrinsic evidence specifying the city and state. Likewise, the court held that the price terms in the March 13 memorandum, while ambiguous, could be clarified by examining extrinsic evidence. It concluded that defendants' evidence raised a

mistakes in arriving at the figure of $14,404,841, one in the rental income calculation and another in the multiplier he applied to that figure.

[3] Given the superscript notation employed by plaintiff when he wrote "$16,750.$^{00}$," it might be said that *three* zeros were omitted from the price. However, the characterization of the error is immaterial in light of the parties' agreement that the intended figure was $16,750,000.

triable issue as to whether the parties had agreed on a formula for determining the purchase price. The court further ruled that the fraud claim failed because plaintiffs could not prove damages. Only the contract claims are at issue in this appeal.

## II. DISCUSSION

Defendants contend the Court of Appeal improperly considered extrinsic evidence to establish essential contract terms. They insist the statute of frauds requires a memorandum that, standing alone, supplies all material elements of the contract. Plaintiffs, on the other hand, argue that extrinsic evidence is routinely admitted for the purpose of determining whether memoranda comply with the statute of frauds.[4]

Both sides of this debate find support in California case law, sometimes in the same opinion. Part A of our discussion explains that plaintiffs' view is correct. The statute of frauds does not preclude the admission of evidence in any form; it imposes a writing requirement, but not a comprehensive one. In part B, however, we conclude that defendants are nevertheless entitled to judgment. The Court of Appeal properly considered the parties' extrinsic evidence, but erroneously deemed it legally sufficient under the statute of frauds to establish the price sought by plaintiffs.

### A. *The Memorandum Requirement of the Statute of Frauds*

■ The statute of frauds does not require a written contract; a "note or memorandum . . . subscribed by the party to be charged" is adequate. (Civ. Code, § 1624, subd. (a).)[5] In *Crowley v. Modern Faucet Mfg. Co.* (1955) 44

---

[4] Defendants' argument is supported by amicus curiae Professor Richard A. Lord, current editor of the fourth edition of Williston on Contracts. The Apartment Association of Greater Los Angeles has also contributed an amicus curiae brief, urging us in cursory fashion to reverse the Court of Appeal's decision in order to discourage "dishonest dealing and sharp real estate practice."

Amicus curiae California Association of Realtors favors plaintiffs' position, arguing that ambiguities are not unusual in real estate transactions and resort to extrinsic evidence is required to prevent parties who have second thoughts from escaping their contractual obligations.

[5] Civil Code section 1624, subdivision (a) states: "The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent." Subdivision (a)(3) of section 1624 includes agreements for the sale of real property.

Our discussion does not apply to any other "statute of frauds" imposing a stricter writing requirement. (Rest.2d Contracts, § 131, com. a, p. 334; see, e.g., Fam. Code, § 852 [transmutation agreements involving separate and community property; *In re Marriage of Benson* (2005) 36 Cal.4th 1096, 1108–1109 [32 Cal.Rptr.3d 471, 116 P.3d 1152]]; Fam. Code, § 1611 [premarital agreements; *In re Marriage of Shaban* (2001) 88 Cal.App.4th 398, 405 [105 Cal.Rptr.2d 863]]; Civ. Code, § 1803.1 et seq. [retail installment contracts].) Nor does our

Cal.2d 321 [282 P.2d 33], we observed that "[a] written memorandum is not identical with a written contract [citation]; it is merely evidence of it and usually does not contain all of the terms." (*Id.* at p. 323; see also *Kerner v. Hughes Tool Co.* (1976) 56 Cal.App.3d 924, 934 [128 Cal.Rptr. 839]; 1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 350, p. 397.) Indeed, in most instances it is not even necessary that the parties intended the memorandum to serve a contractual purpose.[6] (Rest.2d Contracts, § 133; 1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 352, p. 398; see *Moss v. Atkinson* (1872) 44 Cal. 3, 16–17.)

■ A memorandum satisfies the statute of frauds if it identifies the subject of the parties' agreement, shows that they made a contract, and states the essential contract terms with reasonable certainty. (Rest.2d Contracts, § 131; 1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 353, p. 399.) "Only the essential terms must be stated, ' "details or particulars" need not [be]. What is essential depends on the agreement and its context and also on the subsequent conduct of the parties . . . .' (Rest.2d Contracts, § 131, com. g, p. 338.)" (*Seaman's Direct Buying Service, Inc. v. Standard Oil Co.* (1984) 36 Cal.3d 752, 762–763 [206 Cal.Rptr. 354, 686 P.2d 1158], overruled on another point in *Freeman & Mills, Inc. v. Belcher Oil Co.* (1995) 11 Cal.4th 85, 88 [44 Cal.Rptr.2d 420, 900 P.2d 669].)

■ This court recently observed that the writing requirement of the statute of frauds " 'serves only to prevent the contract from being unenforceable' [citation]; it does not necessarily establish the terms of the parties' contract." (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 345 [9 Cal.Rptr.3d 97, 83 P.3d 497].) Unlike the parol evidence rule, which "determines the enforceable and incontrovertible terms of an integrated written agreement," the statute of frauds "merely serve[s] an evidentiary purpose." (*Ibid.*) As the drafters of the Second Restatement of Contracts explained: "The primary purpose of the Statute is evidentiary, to require reliable evidence of the existence and terms of the contract and to prevent enforcement through fraud or perjury of contracts never in fact made. The contents of the writing must be such as to make successful fraud unlikely, but the possibility need not be excluded that some other subject matter or person than those intended will also fall within the words of the writing. Where only an

discussion govern the more liberal statute of frauds provided in the California Uniform Commercial Code. (Cal. U. Com. Code, § 2201; see Cal. Code com., 23A pt. 1 West's Ann. Cal. U. Com. Code (2002) foll. § 2201, p. 172; 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 378, pp. 419–420.)

[6] There is an exception to this rule for memoranda of contracts made upon consideration of marriage, which are deemed to serve not only an evidentiary but also a cautionary function. (Rest.2d Contracts, § 133 & com. a, p. 346.)

evidentiary purpose is served, *the requirement of a memorandum is read in the light of the dispute which arises and the admissions of the party to be charged*; there is no need for evidence on points not in dispute." (Rest.2d Contracts, § 131, com. c, p. 335, italics added; accord, *Seaman's Direct Buying Service, Inc. v. Standard Oil Co., supra,* 36 Cal.3d at pp. 764–765.)

Thus, when ambiguous terms in a memorandum are disputed, extrinsic evidence is admissible to resolve the uncertainty. (*In re Marriage of Benson, supra,* 36 Cal.4th at p. 1108; *Seaman's Direct Buying Service, Inc. v. Standard Oil Co., supra,* 36 Cal.3d at p. 763, fn. 2; *Beverage v. Canton Placer Mining Co.* (1955) 43 Cal.2d 769, 774–775 [278 P.2d 694]; *Searles v. Gonzalez* (1923) 191 Cal. 426, 431–433 [216 P. 1003].) Extrinsic evidence can also support reformation of a memorandum to correct a mistake. (Rest.2d Contracts, § 131, com. g, p. 338; *Calhoun v. Downs* (1931) 211 Cal. 766, 768–770 [297 P. 548]; 1 Witkin, Summary of Cal. Law, *supra,* Contracts, §§ 355, 356, pp. 403–404.)

■ Because the memorandum itself must include the essential contractual terms, it is clear that extrinsic evidence cannot *supply* those required terms. (See, e.g., *Friedman v. Bergin* (1943) 22 Cal.2d 535, 537–539 [140 P.2d 1].) It can, however, be used to *explain* essential terms that were understood by the parties but would otherwise be unintelligible to others. Two early cases from this court demonstrate that a memorandum can satisfy the statute of frauds, even if its terms are too uncertain to be enforceable when considered by themselves.

In *Preble v. Abrahams* (1891) 88 Cal. 245 [26 P. 99], a written agreement for the sale of land described the property to be sold as " 'forty acres of the eighty-acre tract at Biggs.' "[7] (*Id.* at p. 248.) The court observed: "[A]n agreement not in writing for the sale and purchase of real estate is void. And the description of the property in the written agreement is so entirely uncertain as to render the instrument inoperative and void, unless we can go beyond the face of it to ascertain its meaning." (*Id.* at pp. 249–250.)

To give effect to the agreement, the *Preble* court relied on extrinsic evidence that another buyer had purchased one 40-acre tract and the defendant had agreed to purchase the remainder. (*Preble v. Abrahams, supra,* 88 Cal.

---

[7] The document in question was referred to by the *Preble* court variously as an "agreement," a "contract," and a "memorandum." (*Preble v. Abrahams, supra,* 88 Cal. at p. 249.) The brevity and informality of the writing are such that, at least by modern standards, it can properly be considered only a "memorandum" for purposes of the statute of frauds. (See *id.* at p. 248.)

at p. 250.) "We think the evidence makes the subject-matter sufficiently certain, and that is all that is necessary. Professor Pomeroy says: 'It is not strictly accurate to say that the subject-matter must be absolutely certain from the writing itself, or by reference to some other writing. The true rule is, that the situation of the parties and the surrounding circumstances, when the contract was made, can be shown by parol evidence, so that the court may be placed in the position of the parties themselves; and if *then* the subject-matter is identified, and the terms appear reasonably certain, it is enough.' (Pomeroy on Contracts, sec. 227, note.)" (*Preble v. Abrahams, supra*, 88 Cal. at pp. 250–251.)

In *Brewer v. Horst and Lachmund Co.* (1900) 127 Cal. 643 [60 P. 418], a contract was memorialized by two telegrams employing a form of shorthand notation so arcane that "[i]f there were nothing to look to but the telegrams, the court might find it difficult, if not impossible, to determine the nature of the contract, or that any contract was entered into between the parties." (*Id.* at p. 646.) The defendant contended the telegrams were an insufficient "note or memorandum" to satisfy the statute of frauds. (*Ibid.*) The *Brewer* court disagreed, stating: "[T]he court is permitted to interpret the memorandum (consisting of the two telegrams) by the light of all the circumstances under which it was made; and if, when the court is put into possession of all the knowledge which the parties to the transaction had at the time, it can be plainly seen from the memorandum who the parties to the contract were, what the subject of the contract was, and what were its terms, then the court should not hesitate to hold the memorandum sufficient. Oral evidence may be received to show in what sense figures or abbreviations were used; and their meaning may be explained as it was understood between the parties." (*Ibid.*)

Reading the telegrams "by the light of the circumstances surrounding the parties," the *Brewer* court concluded it was clear that they referred to a contract for the purchase of 296 bales of hops on terms understood by the parties. (*Brewer v. Horst and Lachmund Co., supra*, 127 Cal. at p. 647.) The facts of *Brewer* were adapted by the drafters of the Restatements as an illustration of a sufficient memorandum for purposes of the statute of frauds. (Rest., Contracts, § 207, com. a, illus. 8, p. 281; Rest.2d Contracts, § 131, com. e, illus. 7, p. 336; and see Rest.2d Contracts, Rptrs. Note on com. e, p. 340.)

Despite this venerable authority, conflicting statements appear in other California cases: "The sufficiency of a writing to satisfy the statute of frauds

cannot be established by evidence which is extrinsic to the writing itself. (Code Civ. Proc., § 1973.)[8]" (*Franklin v. Hansen* (1963) 59 Cal.2d 570, 573–574 [30 Cal.Rptr. 530, 381 P.2d 386].)[9] "The preeminent qualification of a memorandum under the statute of frauds is 'that it must contain the essential terms of the contract, expressed with such a degree of certainty that it may be understood without recourse to parol evidence to show the intention of the parties.' (5 Browne on Statute of Frauds, sec. 371.)" (*Zellner v. Wassman* (1920) 184 Cal. 80, 85–86 [193 P. 84]; accord, e.g., *Seymour v. Oelrichs* (1909) 156 Cal. 782, 787 [106 P. 88].) "The whole object of the statute would be frustrated if any substantive portion of the agreement could be established by parol evidence." (*Craig v. Zelian* (1902) 137 Cal. 105, 106 [69 P. 853]; accord, e.g., *Seymour v. Oelrichs, supra,* 156 Cal. at p. 787.)[10] "Unless the writing, considered alone, expresses the essential terms with sufficient certainty to constitute an enforceable contract, it fails to meet the demands of the statute. [Citations.]" (*Burge v. Krug* (1958) 160 Cal.App.2d 201, 207 [325 P.2d 119]; *Ellis v. Klaff* (1950) 96 Cal.App.2d 471, 477 [216 P.2d 15].) Defendants rely on these and similar cases to argue that the Court of Appeal improperly considered extrinsic evidence to determine the

---

[8] Former Code of Civil Procedure section 1973 was a restatement of the statute of frauds, with the additional provision that "[e]vidence, therefore, of the agreement, can not be received without the writing or secondary evidence of its contents." (Stats. 1937, ch. 316, § 1, p. 695.) This section was repealed in 1965 as an unnecessary duplication of Civil Code section 1624. (7 Cal. Law Revision Com. Rep. (1965) p. 1315.) Notably, however, the former statute did not purport to exclude extrinsic evidence in cases where there was a memorandum of the contract.

[9] The *Franklin* court attempted to straddle the two lines of authority on this point by also stating that when a memorandum "imports the essentials of a contractual obligation although it fails to do so in an explicit, definite or complete manner, it is always permissible to show the circumstances which attended its making." (*Franklin v. Hansen, supra,* 59 Cal.2d at p. 574.) The court referred to *Brewer,* among other cases, as an instance in which "the memorandum itself demonstrated the existence of a contractual intent on the part of the one to be charged, and extrinsic evidence was necessary only to define the limits thereof." (*Ibid.*) This was a stretch too far. If extrinsic evidence is necessary to clarify or complete the essential terms of a memorandum, the sufficiency of the memorandum has been established by extrinsic evidence. And the *Brewer* court plainly endorsed the consideration of extrinsic evidence not merely to "define the limits" of the parties' agreement, but to determine in the first instance whether the telegrams reflected a contract with sufficient certainty to comply with the statute of frauds. (*Brewer v. Horst and Lachmund Co., supra,* 127 Cal. at p. 646.)

[10] *Craig* presents an interesting comparison with *Preble v. Abrahams.* The description of the land to be conveyed in *Craig* (" 'a strip of land in front of Golden Rule Store and Stent Market' ") was as vague as the description in *Preble* (" 'forty acres of the eighty-acre tract at Biggs' "). (*Craig v. Zelian, supra,* 137 Cal. at p. 106; *Preble v. Abrahams, supra,* 88 Cal. at p. 250.) But in *Preble* extrinsic evidence explained the description in the memorandum, whereas in *Craig* the only extrinsic aid to locating the property was a map that was not in evidence. (*Craig v. Zelian, supra,* 137 Cal. at p. 106.) On its facts, *Craig* is properly viewed as a case of insufficient extrinsic evidence, rather than one where the writing itself was necessarily deficient.

meaning of essential but imperfectly stated terms in the memorandum drafted by plaintiff Sterling.

■ To clarify the law on this point, we disapprove the statements in California cases barring consideration of extrinsic evidence to determine the sufficiency of a memorandum under the statute of frauds. The purposes of the statute are not served by such a rigid rule, which has never been a consistent feature of the common law. Corbin observes: "Judicial dicta abound to the effect that the writing must contain all of the 'essential terms and conditions' of the contract, and it is often said that these must be so clear as to be understood 'without any aid from parol testimony.' But the long course of judicial decision shows that 'essential terms and conditions' is itself a term of considerable flexibility and that the courts do not in fact blind themselves by excluding parol testimony when it is a necessary aid to understanding." (4 Corbin on Contracts (rev. ed. 1997) § 22.2, pp. 706–707, fns. omitted.)

"Some confusion is attributable to a failure to keep clearly in mind the purpose of the statute and the informal character of the evidence that the actual words of the statute require; some is no doubt due to differences in the attitude of the judges as to the beneficence of the statute and the wisdom of its existence.[11] Further, there are differences in the strictness of judicial requirements as to the contents of the memorandum. It is believed that sometimes these apparent differences can be explained by the degree of doubt existing in the court's mind as to the actual making and performance of the alleged contract. The better and the more disinterested is the oral testimony offered by the plaintiff, the more convincing the corroboration that is found in the surrounding circumstances, and the more limited the disputed issue because of admissions made by the defendant, the less that should be and is required of the written memorandum." (4 Corbin on Contracts, *supra*, § 22.2, p. 709, fn. omitted.)

Williston offers similar counsel: "In determining the requisites and meaning of a 'note or memorandum in writing,' courts often look to the origin and fundamental purpose of the Statute of Frauds. In fact, a failure to do so will often result in a futile preoccupation with the numerous and conflicting precepts and decisions involving the clauses providing for a note or memorandum, and a corresponding failure to see the forest for the trees.

"The Statute of Frauds was not enacted to afford persons a means of evading just obligations; nor was it intended to supply a cloak of immunity to

---

[11] This court has noted the criticism directed at the statute of frauds. (*Sunset-Sternau Food Co. v. Bonzi* (1964) 60 Cal.2d 834, 838, fn. 3 [36 Cal.Rptr. 741, 389 P.2d 133]; see also 1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 342, pp. 390–391.)

hedging litigants lacking integrity; nor was it adopted to enable defendants to interpose the Statute as a bar to a contract fairly, and admittedly, made. In brief, the Statute 'was intended to guard against the perils of perjury and error in the spoken word.' Therefore, if after a consideration of the surrounding circumstances, the pertinent facts and all the evidence in a particular case, the court concludes that enforcement of the agreement will not subject the defendant to fraudulent claims, the purpose of the Statute will best be served by holding the note or memorandum sufficient even though it is ambiguous or incomplete." (10 Williston on Contracts (4th ed. 1999) § 29:4, pp. 437–438, fns. omitted.)[12]

█ The governing principle is: "That is certain which can be made certain." (Civ. Code, § 3538; *Beverage v. Canton Placer Mining Co., supra,* 43 Cal.2d at p. 774; see also, e.g., *Preble v. Abrahams, supra,* 88 Cal. at p. 251; *Alameda Belt Line v. City of Alameda* (2003) 113 Cal.App.4th 15, 21 [5 Cal.Rptr.3d 879].) We hold that if a memorandum includes the essential terms of the parties' agreement, but the meaning of those terms is unclear, the memorandum is sufficient under the statute of frauds if extrinsic evidence clarifies the terms with reasonable certainty and the evidence as a whole demonstrates that the parties intended to be bound. Conflicts in the extrinsic evidence are for the trier of fact to resolve, but whether the evidence meets the standard of reasonable certainty is a question of law for the court. (*Phillippe v. Shapell Industries* (1987) 43 Cal.3d 1247, 1258 [241 Cal.Rptr. 22, 743 P.2d 1279]; *Niles v. Hancock* (1903) 140 Cal. 157, 163 [73 P. 840].)[13]

█ We emphasize that a memorandum of the parties' agreement is *controlling* evidence under the statute of frauds. Thus, extrinsic evidence cannot be employed to prove an agreement at odds with the terms of the memorandum. This point was made in *Beazell v. Schrader* (1963) 59 Cal.2d 577 [30 Cal.Rptr. 534, 381 P.2d 390]. There, the plaintiff sought to recover a

---

[12] Williston, like this court in *Franklin v. Hansen* (see fn. 9, *ante*), has embraced conflicting views. In a later section, the treatise quotes *Ellis v. Klaff, supra,* 96 Cal.App.2d 471, for the proposition that " 'the writing, considered alone' " must " 'express[] the essential terms with sufficient certainty to constitute an enforceable contract.' " (10 Williston on Contracts, *supra,* § 29:8, p. 472.)

[13] We note that a flexible, pragmatic view of the statute of frauds has deep roots in the common law. In 1747, Lord Hardwicke, sitting as Lord Chancellor, observed: "The meaning of the statute is to reduce contracts to a certainty, in order to avoid perjury on the one hand, and fraud on the other, and therefore, both in this court and the courts of common law, when an agreement has been reduced to such a certainty, and the substance of the statute has been complied with in the material part, the forms have never been insisted upon." (*Welford v. Beazely* (Ch. 1747) 26 Eng.Rep. 1090; accord, *Moss v. Atkinson, supra,* 44 Cal. 3, 16; *Clason's Exr's v. Bailey* (N.Y.Sup.Ct. 1817) 14 Johns. 484; *Higdon v. Thomas* (Md. 1827) 1 H. & G. 139.)

5 percent real estate broker's commission under an oral agreement. (*Id.* at p. 579.) The escrow instructions, which specified a 1.25 percent commission, were the "memorandum" on which the plaintiff relied to comply with the statute. However, he contended the instructions incorrectly reflected the parties' actual agreement, as shown by extrinsic evidence. (*Id.* at p. 580.) The *Beazell* court rejected this argument, holding that under the statute of frauds, "the parol agreement of which the writing is a memorandum must be one whose terms are consistent with the terms of the memorandum." (*Id.* at p. 582.) Thus, in determining whether extrinsic evidence provides the certainty required by the statute, courts must bear in mind that the evidence cannot contradict the terms of the writing.

### B.  *The Sufficiency of This Memorandum*

As noted above, it is a question of law whether a memorandum, considered in light of the circumstances surrounding its making, complies with the statute of frauds. (*Phillippe v. Shapell Industries, supra,* 43 Cal.3d at p. 1258.) Accordingly, the issue is generally amenable to resolution by summary judgment. (Cf. *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1004 [4 Cal.Rptr.3d 103, 75 P.3d 30].) We independently review the record to determine whether a triable issue of fact might defeat the statute of frauds defense in this case. (*Id.* at p. 1003.)

A memorandum of a contract for the sale of real property must identify the buyer, the seller, the price, and the property. (*King v. Stanley* (1948) 32 Cal.2d 584, 589 [197 P.2d 321].)[14] Defendants contend the memorandum drafted by plaintiff Sterling fails to adequately specify the seller, the property, or the price.[15]

The Court of Appeal correctly held that the seller and the properties were sufficiently identified. The parties themselves displayed no uncertainty as to those terms before their dispute over the price arose. It is a "cardinal rule of construction that when a contract is ambiguous or uncertain the practical construction placed upon it by the parties before any controversy

---

[14] The traditional formulation of essential terms also included the time and manner of payment, factors not at issue in this case. (*King v. Stanley, supra,* 32 Cal.2d at p. 589.) In *House of Prayer v. Evangelical Assn. for India* (2003) 113 Cal.App.4th 48, 53–54 [7 Cal.Rptr.3d 24], the court reasoned that because contracts for the sale of real property are enforceable without specification of a time of performance, that term is not essential under the statute of frauds.

[15] Defendants do not here challenge the sufficiency of Taylor's signature on the March 15 letter to meet the subscription requirement of the statute of frauds. Both the letter and the March 13 memorandum may be considered together to satisfy the statute. (*King v. Stanley, supra,* 32 Cal.2d at p. 588.) The parties' dispute concerns only the terms of the memorandum.

arises as to its meaning affords one of the most reliable means of determining the intent of the parties." (*Bohman v. Berg* (1960) 54 Cal.2d 787, 795 [8 Cal.Rptr. 441, 356 P.2d 185].) The same rule governs the interpretation of a memorandum under the statute of frauds. (See Rest.2d Contracts, § 131, com. g, p. 338; *Seaman's Direct Buying Service, Inc. v. Standard Oil Co., supra*, 36 Cal.3d at pp. 762–763.)[16]

■ The memorandum referred to "Seller Larry Taylor, & Christina Development." Defendants argue that the omission of the actual owner of the properties, SMC, is fatal. However, they do not dispute Taylor's authorization to act as SMC's agent, or his actual performance of that role. A contract made in the name of an agent may be enforced against an undisclosed principal, and extrinsic evidence is admissible to identify the principal. (*Sunset Milling & Grain Co. v. Anderson* (1952) 39 Cal.2d 773, 778 [249 P.2d 24]; 2 Witkin, Summary of Cal. Law (10th ed. 2005) Agency, §§ 158 & 159, pp. 202–203; see also *California Canneries Co. v. Scatena* (1897) 117 Cal. 447, 449–450 [49 P. 462].) ■ If a term is stated in a memorandum with sufficient certainty to be enforced, it satisfies the statute of frauds. (*Seaman's Direct Buying Service, Inc. v. Standard Oil Co., supra*, 36 Cal.3d at p. 763.) Therefore, the reference to Taylor was adequate, regardless of the apparently mistaken inclusion of Christina Development. (See Rest.2d Contracts, § 131, com. f, p. 337.)

■ Similarly, while the properties were identified in the memorandum only by street address, neither party displayed any confusion over their actual location. The purchase agreements Taylor prepared included full legal descriptions, and when Sterling received those agreements he did not object that he wanted to buy buildings on 4th and 14th Streets in Manhattan rather than Santa Monica. In any event, the better view has long been that extrinsic evidence may be consulted to locate property described in imprecise terms, even though a memorandum with a more complete description would be preferable. (*Beverage v. Canton Placer Mining Co., supra*, 43 Cal.2d at pp. 774–775, citing cases.)

As defendants forthrightly conceded in the trial court, "[t]he problem here is the price term." The Court of Appeal concluded that the lines in the memorandum stating "approx. 10.468 X gross income[,] estimated income

---

[16] This rule of construction undermines the contention in Professor Lord's amicus curiae brief that the multiple ambiguities in the memorandum before us, considered together in the abstract, render it insufficient under the statute of frauds. A skillful attorney can conjure ambiguities from nearly any document, but such hypothetical difficulties often disappear when the surrounding circumstances are considered.

1.600.000, <u>Price $16,750.<sup>00</sup></u>" were ambiguous, given the use of the modifier "approx." before the multiplier, the omitted zero in the price, and the uncertain meaning of "gross income." The court then considered Sterling's testimony that "approx." was meant to modify the total price, not the multiplier; that the missing zero was merely an error; and that "gross income" was used by the parties to refer to actual gross annual income. It decided that this evidence, if accepted by the trier of fact, could establish an agreement to determine the price based on a formula, which would be binding under *Carver v. Teitsworth* (1991) 1 Cal.App.4th 845, 852 [2 Cal.Rptr.2d 446]. In *Carver*, a bid for either a specified price or $1,000 over any higher bid was deemed sufficiently certain. (*Id.* at pp. 849, 852–853.)

In this court, plaintiffs also cite *Cal. Lettuce Growers v. Union Sugar Co.* (1955) 45 Cal.2d 474 [289 P.2d 785], to show that a price term may be calculated from a formula. There, a price formula was derived from industry custom and the parties' past practice. (*Id.* at pp. 482–483.) Plaintiffs contend the parties here negotiated a 10.468 multiplier to be applied to the actual gross rental income from the buildings in March 2000, as indicated by the fact that Taylor gave Sterling rent rolls before their March 13 meeting.

The Court of Appeal erred by deeming Sterling's testimony sufficient to establish his interpretation of the memorandum for purposes of the statute of frauds. Had Taylor testified that the parties meant to leave the price open to determination based on a rental income figure that was yet to be determined, this would be a different case. Then, the "admissions of the party to be charged" might have supported a reasonably certain price term derived from a negotiated formula. (Rest.2d Contracts, § 131, com. c, p. 335.) Here, however, Taylor insists the price was meant to be $16,750,000, and Sterling agrees that was the number he intended to write down, underlined, as the "Price."

$16,750,000 is clearly an approximate product of the formula specified in the memorandum, applied to the income figure stated there.[17] On the other hand, Sterling's asserted price of $14,404,841 cannot reasonably be considered an approximation of $16,750,000. It is instead an approximate product of the formula applied to an actual income figure not found in the memorandum. The writing does not include the term "actual gross income," nor does it state that the price term will vary depending on proof or later agreement regarding the actual rental income from the buildings. In effect, Sterling would employ only the first part of the price term ("approx. 10.468 X gross

---

[17] The actual product of $1,600,000 multiplied by 10.468 is $16,748,800.

income") and ignore the last parts ("estimated income 1.600.000, <u>Price</u> <u>$16,750.</u>$^{00}$"). He would hold Taylor to a price that is 10.468 times the actual rental income figure gleaned from the rent rolls, but only "approximately" so because of Sterling's computational errors. (See fn. 2, *ante.*)

Thus, two competing interpretations of the memorandum were before the court. Taylor's is consistent with the figures provided in the memorandum, requiring only the correction of the price by reference to undisputed extrinsic evidence. Sterling's price is not stated in the memorandum, and depends on extrinsic evidence in the form of his own testimony, disputed by Taylor, that the parties intended to apply the formula to actual gross rental income instead of the estimated income noted in the memorandum. Even if the trier of fact were to accept Sterling's version of the parties' negotiations, the price he seeks is not reflected in the memorandum; indeed, it is inconsistent with the price term that appears in the memorandum. Under these circumstances, we conclude the evidence is insufficient to establish Sterling's price term with the reasonable certainty required by the statute of frauds. (See *Beazell v. Schrader, supra,* 59 Cal.2d at p. 582.)

The statute of frauds demands written evidence that reflects the parties' mutual understanding of the essential terms of their agreement, when viewed in light of the transaction at issue and the dispute before the court. The writing requirement is intended to permit the enforcement of agreements actually reached, but "to prevent enforcement through fraud or perjury of contracts never in fact made." (Rest.2d Contracts, § 131, com. c, p. 335.) The sufficiency of a memorandum to fulfill this purpose may depend on the quality of the extrinsic evidence offered to explain its terms. In *Preble v. Abrahams, supra,* 88 Cal. 245, the memorandum failed to describe the property to be sold with any certainty, but extrinsic evidence established that the parties could only have been referring to the portion of a tract that was not sold to another buyer. (*Id.* at p. 250.) Similarly, in *Brewer v. Horst and Lachmund Co., supra,* 127 Cal. 643, telegrams that were otherwise inscrutable demonstrated an ascertainable agreement when the court considered the circumstances of the transaction and the parties' understanding of the terms employed. (*Id.* at pp. 646–647.)

Here, unlike in the *Preble* and *Brewer* cases, the extrinsic evidence offered by plaintiffs is at odds with the writing, which states a specific price and does not indicate that the parties contemplated any change based on actual rental income. Therefore, the evidence is insufficient to show with reasonable certainty that the parties understood and agreed to the price alleged by plaintiffs. The price terms stated in the memorandum, considered together with the extrinsic evidence of the contemplated price, leave a degree

of doubt that the statute of frauds does not tolerate. The trial court properly granted defendants summary judgment.

## III. DISPOSITION

The judgment of the Court of Appeal is reversed with directions to affirm the trial court judgment in its entirety.

George, C. J., Baxter, J., Chin, J., and Moreno, J., concurred.

**KENNARD, J.,** Concurring and Dissenting.—I agree with the majority that extrinsic evidence is admissible to resolve the meaning of an ambiguity in a written memorandum required by the statute of frauds as evidence of an agreement, and that conflicts in the evidence are for the trier of fact to resolve. The majority, however, goes astray when it takes it upon itself to resolve an existing conflict in the evidence. In my view, the ambiguity in the language of the memorandum at issue should be resolved by the trier of fact.

### I.

In January 2000, plaintiff Donald Sterling and defendant Lawrence N. Taylor, both of whom are experienced real estate investors, discussed the proposed sale of three apartment buildings in Santa Monica owned by a partnership in which defendant was the general partner. On March 13, 2000, they met again. At the meeting, plaintiff (the prospective buyer) prepared a brief handwritten memorandum entitled "Contract for the Sale of Real Property." As relevant here, the memorandum identified properties at "808 4th St.," "843 4th St.," and "1251 14th St." This is immediately followed by "approx 10.468 X gross income [¶] estimated income 1.600.000, <u>Price $16,750,000.</u>"[1] The memorandum was initialed by plaintiff, but was not signed by defendant. Two days later, on March 15, 2000, plaintiff sent defendant a letter that confirmed the contract of sale but did not mention the price. Defendant signed the letter below the handwritten notation, "Agreed, Accepted, & Approved." The parties dispute whether the March 13 memorandum was attached to the March 15 letter.

The issue is whether the document entitled "Contract for the Sale of Real Property" is a memorandum sufficient to satisfy the statute of frauds. That

---

[1] The memorandum has the word "income" on a line above the words "estimated 1.600.000" and the number "$16,750,00." As the majority notes, the parties agree that the intended phrasing was "estimated income 1.600.000" and that the intended figure was "$16,750,000." (Maj. opn., *ante*, at pp. 762, fn. 1, 764, fn. 3.)

statute provides that contracts for, among other things, the sale of real estate are invalid unless evidenced by a note or memorandum signed by the party to be charged. (Civ. Code, § 1624, subd. (a)(3).) Plaintiff here claims that the memorandum meets the requirements of the statute of frauds because extrinsic evidence he offered clarifies that the agreed price was $14,404,841— determined by applying the formula in the memorandum of multiplying the actual rent times 10.468. Plaintiff's extrinsic evidence includes the "Contract for Sale of Real Property," the letter dated March 15, 2000, confirming the buildings' sale signed by defendant, and defendant's having given plaintiff information showing the actual rent received. Defendant maintains that the price is the figure $16,750,000 expressed in the memorandum.

The trial court granted defendant's motion for summary judgment. The Court of Appeal, concluding there was a triable issue of material fact as to whether the parties had agreed to a formula for determining the purchase price, reversed.

## II.

The parties' dispute here centers on whether the price description in the memorandum is ambiguous so that extrinsic evidence is admissible to clarify its meaning and satisfy the statute of frauds. Regarding price the memorandum states: "approx. 10.468 X gross income [¶] estimated income 1.600.000, Price $16,750,000." Plaintiff claims that the word "approx." modified the entire statement, not just "10.468 X gross income," and that the parties understood the term "gross income" to mean actual annual gross rental income. In other words, plaintiff's position is that the memorandum sets forth a formula for determining the actual price—10.468 multiplied by actual annual gross rental income, which results in a price of $14,404,841—and that the reference to "Price $16,750,000" is an estimate of the actual price, determined by application of the formula just mentioned, albeit using a somewhat inaccurate estimate of gross annual rental income. (See, e.g., *Cal. Lettuce Growers v. Union Sugar Co.* (1955) 45 Cal.2d 474, 482 [289 P.2d 785] [price need not be specified if it can be objectively determined]; *Carver v. Teitsworth* (1991) 1 Cal.App.4th 845, 853 [2 Cal.Rptr.2d 446] [same].) Defendant disagrees, contending that the memorandum's mention of "Price $16,750,000" reflects the actual purchase price agreed upon by the parties. Both have a point.

As the Court of Appeal observed, the language in the memorandum is ambiguous; that is, it can reasonably be read as each party proposes. (*Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 391 [46 Cal.Rptr.3d 668, 139

P.3d 56] [" 'An ambiguity arises when language is reasonably susceptible of more than one application to material facts' "].) To accept plaintiff's argument would give meaning to the language in the disputed statement of "10.468 X gross income [¶] estimated 1.600.000." To accept defendant's argument would give meaning to the term "Price $16,750,000." Which view should be accepted is a determination to be made by the trier of fact, based on its consideration of the extrinsic evidence presented. (See Maj. opn., *ante*, at p. 767 ["when ambiguous terms in a memorandum are disputed, extrinsic evidence is admissible to resolve the uncertainty"].) Either way, the trier of fact's resolution would result in a specific purchase price: one arrived at through application of a formula expressed in the memorandum, the other through acceptance of the figure $16,750,000 mentioned in the memorandum.

The majority, however, simply adopts defendant's view instead of leaving it to the trier of fact to resolve the conflict in the evidence. In accepting defendant's view, the majority rejects plaintiff's view as attempting to alter rather than explain the terms of the memorandum. (Maj. opn., *ante*, at pp. 775–776.) I disagree.

Apparently based on its own evaluation of the evidence, which as discussed above is conflicting, the majority takes it upon itself to decide that the agreed price was $16,750,000 and then concludes that any extrinsic evidence presented by plaintiff would be inconsistent with that figure. (Maj. opn., *ante*, at p. 775.) The majority reasons that plaintiff is looking only to the first part of the memorandum's price description of "approx. 10.468 X gross income," while ignoring the last part stating "estimated income 1.600.000, Price $16,750,000." (*Ibid.*) This is both a misapprehension of plaintiff's view and a failure to appreciate that defendant's view too is not free from ambiguity.

Plaintiff's position that the memorandum sets forth a formula for determining the price does not ignore the memorandum's reference to "estimated income 1.600.000, Price $16,750,000." According to plaintiff, the memorandum's *stated* price is itself an *estimate*, for it is the product of the *estimated* income of 1.600.000 times 10.468, while the *actual* price is to be determined by using the formula 10.468 multiplied by the *actual* gross income, resulting in a price of $14,404,841. Defendant's view that the actual price is $16,750,000 finds support in the memorandum's mention of "Price $16,750,000" but it ignores the memorandum's formula that plaintiff relies on. Unlike the majority, I see no reason to reject plaintiff's position as a

matter of law when the purchase terms in the memorandum are ambiguous and are as reasonably susceptible to plaintiff's position as to defendant's. I would leave it to the trier of fact to resolve the ambiguity.

Unlike the majority, I would affirm the judgment of the Court of Appeal.

Werdegar, J., concurred.

Appellants' petition for a rehearing is denied April 18, 2007. George, C. J., did not participate therein. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.