Filed 7/29/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| CHRISTOPHER S. REEDER, | B296148 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. LC106994) |
| v. | |
| SPECIALIZED LOAN SERVICING LLC et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Virginia Keeny, Judge.  Affirmed.

Salisian│Lee, Richard H. Lee, H. Han Pai and Glenn R. Coffman for Plaintiff and Appellant.

Yu│Mohandesi, B. Ben Mohandesi, Pavel Ekmekchyan and Lisa M. Lawrence for Defendants and Respondents.

_____

## SUMMARY

Plaintiff Christopher S. Reeder lost an investment property to foreclosure after he failed to make the balloon payment due on a 2005 home equity line of credit that matured on April 1, 2015. He sued the lender and its assignee, as well as the loan servicer, alleging breach of contract, wrongful foreclosure and three fraud claims. All the claims were founded on plaintiff's assertion that, before the parties executed the credit agreement and deed of trust securing it in 2005, the lender made a verbal commitment that, at the end of the 10-year term, plaintiff could refinance or re-amortize the loan with a new 20-year repayment period.

The trial court sustained defendants' demurrer to these claims without leave to amend, concluding the oral agreement plaintiff alleged was barred by the statute of frauds, and was in any event too indefinite to be enforced. This also meant there could be no wrongful foreclosure cause of action. The court further found no actionable fraud was alleged.

We agree and affirm the judgment.

## FACTS

Plaintiff owned a property on Tiara Street in Encino, originally as his principal residence and then, starting in 2008, as an investment property.

On March 16, 2005, plaintiff obtained a home equity line of credit from defendant E-Loan, Inc. The line of credit (or loan), evidenced by a written credit agreement, had a maximum indebtedness of $245,000, a variable interest rate, and a balloon payment due on its April 1, 2015 maturity date. The loan was secured by a second deed of trust on the Encino property. Wells Fargo Bank, N.A. (not a party) held third and fourth lien positions, with deeds of trust recorded later in April 2005.

2

Plaintiff alleges that before he accepted the line of credit, loan officer Veronica Harmon promised him in a verbal discussion that the 2005 line of credit "would provide a 10-year draw or advance period, subject to a balloon payment at maturity, but [plaintiff] could refinance or re-amortize the loan into a 20-year amortized, principal and interest repayment period." Plaintiff refers to this as the "verbal loan commitment," and alleges he would not have entered into the transaction had he known E-Loan would not honor the verbal loan commitment.

In early 2015, defendant Specialized Loan Servicing LLC (SLS) began servicing plaintiff's loan. Plaintiff did not receive any demand for the balloon payment due on April 1, 2015, and continued to make monthly payments. Later in 2015, SLS returned plaintiff's payments for August, September, and October 2015.

Plaintiff began active inquiries with SLS in September 2015, and learned SLS had reported to credit bureaus that he was 60 days late in paying off the loan. Plaintiff submitted a formal request for loss mitigation assistance from SLS, seeking "to proceed on the correct loan terms as he understood them," and submitted documentation to SLS multiple times in the ensuing months.

In November 2015, E-Loanassigned plaintiff's loan to an affiliate, defendant E*Trade Bank.

In January 2016, SLS erroneously closed its review of plaintiff's loss mitigation request, claiming lack of required documentation. Plaintiff submitted more documents and continued to seek assistance from SLS. In August 2016, SLS offered plaintiff a trial loan modification. Plaintiff rejected this offer "because it was not in accordance with the terms he was

3

verbally promised" in 2005. Plaintiff then sent SLS an email reiterating his request for a 20-year amortization on the loan and removal of any negative credit reporting. He submitted additional documents in October 2016, and resubmitted them in January 2017 after being told they could not be located.

In May 2017, SLS recorded a notice of default, listing a total amount due of more than $265,000.

In June 2017, plaintiff told SLS he intended to sell the property, because SLS was unwilling to provide loan terms as in the verbal loan commitment, and requested removal of the notice of default. In July, he asked SLS to take a "discounted payoff." In August and September, he submitted and resubmitted documents and further requests for mortgage assistance.

In early October, plaintiff received a notice of trustee's sale, recorded on September 25, 2017, setting the sale for October 27, 2017.

Plaintiff submitted a short sale package to SLS on October 5, 2017, and SLS requested additional information from plaintiff over the next several weeks. SLS continued the trustee's sale date, and plaintiff believed this was because of the ongoing discussions. On November 1, 2017, plaintiff received an October 18, 2017 letter denying plaintiff's short sale request because there was sufficient equity in the property to fully pay off the loan.

The trustee's sale occurred on November 3, 2017, with no advance notice to plaintiff. The property was sold to a third party for $300,000.

Plaintiff filed this lawsuit in March 2018. Defendants demurred, plaintiff filed an amended complaint, and defendants again demurred. (Plaintiff did not attach the loan agreement or

4

deed of trust to his complaint.  Defendants sought judicial notice of the deed of trust when they filed their demurrer.)

As mentioned at the outset, the trial court sustained defendants' demurrer to plaintiff's breach of contract, wrongful foreclosure, and fraud claims without leave to amend.  Plaintiff then dismissed several other causes of action, and on January 14, 2019, the trial court entered a minute order stating that all causes of action had either been dismissed or sustained without leave to amend, and the court deemed the matter complete.

Plaintiff filed a timely notice of appeal from the January 14, 2019 order.

## DISCUSSION

### 1.    Standard of Review

A demurrer tests the legal sufficiency of the complaint.  We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action.  For purposes of review, we accept as true all material facts alleged in the complaint, but not contentions, deductions or conclusions of fact or law.  We also consider matters that may be judicially noticed.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.)  Plaintiff has the burden to show a reasonable possibility the complaint can be amended to state a cause of action.  (*Ibid.*)

5

## 2. The Breach of Contract Claim

We conclude the verbal agreement to refinance or re-amortize plaintiff's loan is subject to the statute of frauds and is unenforceable on that ground.  In addition, the oral agreement is too indefinite to be enforced.  Consequently, plaintiff cannot state a cause of action for breach of contract.

### a. The statute of frauds

The statute of frauds provides that certain contracts are invalid unless they, or some note of them, are in writing and signed by the party to be charged.  (Civ. Code, § 1624, subd. (a).)  This writing requirement " ' "serves only to prevent the contract from being unenforceable" ' "; the statute of frauds " 'merely serve[s] an evidentiary purpose.' "  (*Sterling v. Taylor* (2007) 40 Cal.4th 757, 766; *ibid.* [" 'The primary purpose of the Statute is evidentiary, to require reliable evidence of the existence and terms of the contract and to prevent enforcement through fraud or perjury of contracts never in fact made.' "].)

The authorities are clear that the alleged oral agreement is subject to the statute of frauds.  "An agreement for the sale of real property or an interest in real property comes within the statute of frauds.  That includes a promissory note and a deed of trust securing performance under the note."  (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1503; *Secrest v. Security National Mortgage Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 552; see also Civ. Code, § 2922 ["A mortgage can be created, renewed, or extended, only by writing, executed with the formalities required in the case of a grant of real property."].)  Further, "[a]n agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds."  (*Secrest,* at p. 553; *ibid.* [a forbearance agreement was

6

subject to the statute of frauds because it modified the original promissory note and deed of trust the borrowers executed]; Civ. Code, § 1698, subd. (a) ["A contract in writing may be modified by a contract in writing."]; see also *Paul v. Layne & Bowler Corp.* (1937) 9 Cal.2d 561, 564 ["an oral agreement to make a contract which must be in writing, is itself within the statute of frauds"].)

Here, the alleged oral agreement modified the 2005 loan and the trust deed, negating the provision in the trust deed stating that "[a]ll amounts due under the [line of credit] must be paid in full not later than April 1, 2015." It necessarily follows that the alleged verbal loan commitment was subject to the statute of frauds and therefore invalid.

Plaintiff resists this conclusion, contending the oral agreement preceded the loan and trust deed, and therefore did not and could not modify those documents. For this proposition, plaintiff cites *Secrest* and other authorities that refer to subsequent modification of a contract. While most contract modifications no doubt do occur later in time, plaintiff cites no authority that so limits the application of the statute of frauds. It is incontrovertible that the alleged oral agreement changes— indeed, eliminates—an important term of the parties' written agreement. To be valid, it had to be in writing, and it was not.

Plaintiff next contends there is a "fraud exception to the statute of frauds." There is not. Plaintiff correctly points out that the statute of frauds was enacted for the purpose of preventing frauds, and cannot be used to perpetrate a fraud. Thus, " 'a misrepresentation of one's intention is actionable even "when the agreement is oral and made unenforceable by the statute of frauds." ' " (*Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18, 29 (*Tenzer*).) We will revert to this point in our discussion of

7

plaintiff's fraud claims, *post*, but it has nothing to do with plaintiff's breach of contract claim. The contract plaintiff alleges " ' "is oral and made unenforceable by the statute of frauds." ' " (*Ibid.*)[1]

### b.    Uncertainty

Aside from the statute of frauds, the alleged oral agreement is unenforceable for another reason: it is too uncertain and indefinite to be enforced. One court explains: " ' " 'Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable.' " ' " (*Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1174.) In

---

[1]    There are certain circumstances under which a party may be estopped from relying on the statute of frauds to defeat enforcement of an oral contract (*Tenzer, supra,* 39 Cal.3d at p. 27; *Monarco v. Lo Greco* (1950) 35 Cal.2d 621, 623), but plaintiff has made no such claim. The doctrine is applied "to prevent fraud that would result from refusal to enforce oral contracts" in circumstances involving unconscionable injury or unjust enrichment. (*Monarco,* at p. 623.) *Monarco* explains that "fraud may inhere in the unconscionable injury that would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract . . . , or in the unjust enrichment that would result if a party who has received the benefits of the other's performance were allowed to rely upon the statute." (*Id.* at pp. 623-624, citations omitted.) Plaintiff makes no reference to this point in his opening brief, except to say he could amend the complaint to allege the estoppel doctrine. On the facts he has alleged in his complaint, the doctrine does not apply. The facts alleged identify no serious change of position in reliance on the oral agreement; plaintiff had the benefit of a $245,000 line of credit for 10 years.

8

addition to the identity of the lender and the borrower, a contract involving a loan must include its amount and the terms for repayment. (*Ibid.*) "Preliminary negotiations or agreements for future negotiations—so-called agreements to agree—are not enforceable contracts." (*Ibid.*)

The alleged oral agreement fails this test. Plaintiff's operative complaint does not allege any of the basic material terms of a loan that would commence 10 years later—not the loan amount, not the interest rate, and not the amortization schedule. It is apparent to us that, absent those particulars, the intention of the parties cannot be ascertained and the alleged contract is unenforceable. At most, plaintiff has alleged an agreement to agree 10 years later. That is not an enforceable contract.

3.     **The Fraud Claims**

The elements of fraud are misrepresentation, knowledge of falsity, intent to induce reliance on the misrepresentation, justifiable reliance on the misrepresentation, and resulting damages. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) Promissory fraud is a subspecies of fraud, and an action may lie where a defendant fraudulently induces the plaintiff to enter into a contract, by making promises he does not intend to keep. (*Ibid.*) "In such cases, the plaintiff's claim does not depend upon whether the defendant's promise is ultimately enforceable as a contract." (*Ibid.*) "In California, fraud must be pled specifically; general and conclusory allegations do not suffice." (*Id.* at p. 645; *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 47 [" ' "Every element of the cause of action for fraud must be alleged in the proper manner (i.e., factually and specifically)." ' "].)

9

Plaintiff alleged three fraud claims: intentional misrepresentation, false promise, and negligent misrepresentation—all centering on a false promise by E-Loan's loan officer, Ms. Harmon, that after 10 years, plaintiff "would be able to re-amortize or re-finance the 2005 [line of credit] into a 20-year amortized, principal and interest repayment period." We find plaintiff's allegations insufficient to state a fraud claim, promissory or otherwise.

The complaint alleges that when defendants made their promise that plaintiff would be able to re-amortize or refinance after 10 years, they "had no intention of allowing Plaintiff to re-amortize or re-finance." The complaint alleges defendants, through Ms. Harmon, "made their false promises with the intent to induce Plaintiff to enter into the 2005 [line of credit]"; plaintiff "had a right to rely on Defendants' false promises, acted in reasonable reliance on those promises, and, in ignorance of their falsity, entered into the 2005 [line of credit]."

These allegations are the very sort of general and conclusory allegations that are insufficient to state a fraud claim. For one thing, plaintiff has alleged no facts or circumstances suggesting defendants' intent not to perform the alleged promise when it was made. "It is insufficient to show an unkept but honest promise, or mere subsequent failure of performance." (*Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1183 (*Riverisland*).) Plaintiff has alleged no facts or surrounding circumstances suggesting anything more.

More importantly, entirely absent from plaintiff's complaint are any facts that, if proved, would demonstrate plaintiff's justifiable reliance on a promise he could refinance the

10

loan 10 years later.  It is patently unreasonable to rely on a promise of refinancing 10 years down the road, with no indication of what any of the terms of such a refinancing might be.  It is obvious that innumerable factors pertinent to refinancing may change during a 10-year period—property value, equity in the property, income, and so on.  "[P]romissory fraud, like all forms of fraud, requires a showing of justifiable reliance on the defendant's misrepresentation." (*Riverisland, supra,* 55 Cal.4th at p. 1183.)  Plaintiff has alleged no facts or circumstances suggesting such a showing could ever be made.

　　We conclude with a final note.  Plaintiff argues at some length about the parol evidence rule, but is mistaken about its application here.  The parol evidence rule is a rule of substantive law, providing that "when parties enter an integrated written agreement, extrinsic evidence may not be relied upon to alter or add to the terms of the writing." (*Riverisland, supra,* 55 Cal.4th at p. 1174; see also Code Civ. Proc., § 1856.)  There is an exception, however, for evidence of fraud.  (§ 1856, subd. (g); *Riverisland,* at p. 1182 [" '[I]t was never intended that the parol evidence rule should be used as a shield to prevent the proof of fraud.' "].)

　　Here, plaintiff contends the oral agreement "is admissible as parol evidence to establish fraud in inducing [plaintiff] to enter into the 2005 [line of credit] under the guise of false promises." But the fraud exception to the parol evidence rule does not come into play here, where the only question is whether plaintiff has sufficiently alleged a fraud claim in the first place.  As we have seen, he has not.  (Cf. *Julius Castle Restaurant, Inc. v. Payne* (2013) 216 Cal.App.4th 1423, 1442 ["A party claiming fraud in

the inducement is still required to prove they relied on the parol evidence and that their reliance was reasonable."].)

### 4.    Wrongful Foreclosure

The basic elements of a cause of action for wrongful foreclosure are that the trustee has caused " 'an illegal, fraudulent, or willfully oppressive sale' " under the power of sale in a deed of trust; the trustor or other party challenging the sale was prejudiced or harmed; and the trustor tendered the amount of the secured indebtedness or was excused from doing so.  (*Miles v. Deutsche Bank National Trust Co.* (2015) 236 Cal.App.4th 394, 408.)

The sole basis for plaintiff's wrongful foreclosure allegations is his claim that defendants breached the alleged oral loan commitment.  He contends that, "[g]iven the allegations of an enforceable contract and subsequent breach," the foreclosure sale "was illegal, fraudulent, or willfully oppressive."  Because, as we have found, the alleged oral agreement is *not* an enforceable contract, its breach cannot support a claim of wrongful foreclosure.

### 5.    Amendment of the Complaint

Plaintiff contends the trial court abused its discretion in failing to grant leave to amend, and points out that a showing as to how the complaint can be amended to state a legal claim may be made for the first time on appeal.  But plaintiff has not shown how he can amend to cure the defects in the complaint.  He says that he can "provide further details" to show the oral agreement was not subject to the statute of frauds and was not an agreement to agree; to explain he was not in default and the foreclosure sale was illegal; and to show the oral promises made are actionable in fraud.  But he does not tell us what those

12

"further details" are—only what he contends their legal effect would be. Plaintiff's operative complaint does not allege facts sufficient to state a cause of action, and plaintiff adds nothing more in his briefs.

## DISPOSITION

The judgment is affirmed. Respondents shall recover costs of appeal.


GRIMES, Acting P. J.

WE CONCUR:


STRATTON, J.


WILEY, J.

13