Filed 1/13/26  Innovations Health Systems v. Superior Court CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| INNOVATIONS HEALTH SYSTEMS, LLC et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF ALAMEDA COUNTY, <br><br> Respondent, <br><br> CITY HEALTH, A MEDICAL CORPORATION et al., <br><br> Real Parties in Interest. | A174443 <br><br> (Alameda County Super. Ct. No. 22-CV-011351) |

Petitioners Innovations Health Systems, LLC (IHS) and Innovations Health Management, LLC (IHM) (collectively, Innovations) sued real parties in interest City Health, A Medical Corporation (City Health) and Sean Edward Parkin (collectively, real parties), alleging multiple causes of action, including breach of oral contract and breach of written contract.  Arguing that the breach of oral contract claim was barred by the statute of frauds and that the breach of written contract claim was not supported by a writing that contained the essential terms of the parties' agreement, real parties successfully demurred to certain causes of action, including the breach of contract claims, in the first amended complaint (FAC).  After Innovations

amended the FAC, the trial court sustained the demurrer to the breach of contract and related causes of action in the second amended complaint (SAC) without leave to amend. Innovations then filed this petition for writ of mandate, and we stayed all proceedings and issued an order to show cause.[1]

We conclude that the trial court erred by sustaining the demurrer to the cause of action for breach of oral contract and, by extension, the related causes of action for breach of the implied covenant of good faith and fair dealing, an accounting, and declaratory relief. We, however, conclude that the court properly sustained the demurrer to the cause of action for breach of written contract without leave to amend. Accordingly, we grant and deny the petition in part and vacate the stay.

## I. BACKGROUND

A. Facts[2]

In 2015, Parkin and his former business partner formed City Health, which operated two urgent care facilities in San Leandro and Oakland. In May 2018, Parkin, who wanted to replace his former business partner, was introduced to Ken McGuire and Dan Niccum, the owners of Innovations. A few months later, Dr. Brad Piatt became Parkin's new business partner and a 51% owner of City Health.

---

[1] While we do not typically review rulings on the pleadings by extraordinary writ (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 851; *James W. v. Superior Court* (1993) 17 Cal.App.4th 246, 252–253), writ review of a ruling that precludes a party from pleading its case is appropriate to avoid a reversal on appeal, followed by a second trial (*Taylor v. Superior Court* (1979) 24 Cal.3d 890, 894; *Barrett v. Superior Court* (1990) 222 Cal.App.3d 1176, 1183).

[2] The facts are taken from the SAC.

Around "the last quarter of 2018," Innovations entered into a management services agreement (MSA) with City Health.[3] Under the MSA, Innovations "would invest in [City Health] and provide management services to [City Health] in exchange for return on its investment and payment for its management services." More specifically, the MSA provided that Innovations would act as City Health's management services organization (MSO) and receive "a monthly management services fee of $2,500, as well as 70% of 51% of [City Health's] net revenue, which reflects the fair market value of [its] services." The MSA was "formed pursuant to oral statements, written statements, and the conduct of the parties."

One such written statement was a June 2018 e-mail from McGuire to a bank regarding the parties' loan application. The e-mail confirmed that City Health "would be owned 51% by Dr. Piatt and 49% by . . . Parkin." It further explained that the MSO "would be owned 51% by CPI (which is owned 70% by [Innovations] and 30% by Dr. Piatt) and 49% by . . . Parkin" and that " '[p]rofit [d]istribution will be pro rata based on ownership percentages.' " Parkin was included in this e-mail and did not object. The next month, Parkin followed up with the bank and wrote, " 'We are all very anxious to move this deal forward.' "

Another written statement evidencing the MSA was a September 2018 e-mail from Parkin to McGuire. In the e-mail, Parkin wrote that they " 'will own [the MSO] jointly as an LLC entity' " and that the profits from City Health "were to be distributed per the terms of the [MSA]." Parkin confirmed in subsequent e-mails in 2018 that Innovations was "acting as [City Health's] MSO."

---

[3] IHS initially entered into the MSA "under the name California Predictive Imaging [(CPI)] and then later as IHM."

Innovations invested "more than $700,000 of working capital, equipment purchases, rents, construction related costs, and loan payoffs" in City Health between 2018 and 2020 and acted as its MSO from "the last quarter of 2018 until March 19, 2021." Although the parties never finalized or signed a written MSA, a draft "reflecting the 'current verbal agreement' was exchanged between the parties in July 2020." The draft confirmed that Innovations would receive a pro rata percentage of City Health's net profits and "included an initial term of ten years from November 1, 2018." At the end of 2020, Innovations received its first payment from City Health of about "$785,400 out of the approximately $2.2 million in distributions." The amount received by Innovations appears to be consistent with the percentage of City Health's profits allegedly owed to Innovations under the MSA. Due to "the built-out COVID testing and the associated substantial efforts of [Innovations]," City Health "realized over $27.2 million in gross profit and approximately $15.2 million in net income for the first two quarters of 2021, alone."

In March 2021, Parkin "abruptly" and "unilaterally discontinued the MSA with [Innovations], effective March 19, 2021." Despite this, Innovations "continued to ensure [City Health] employees would have benefits coverage and paid more than $116,000 to cover the employee and employer contributions" through September 2021. "Contrary" to the MSA, City Health has "refused to appropriately reimburse [Innovations] for the services [it] provided, including all the services rendered during 2021."

B. Procedural History

In May 2022, Innovations filed a complaint against real parties, alleging causes of action for: (1) breach of oral contract; (2) breach of written contract; (3) breach of implied covenant of good faith and fair dealing;

4

(4) quantum meruit; (5) conversion; (6) accounting; and (7) declaratory relief. After the trial court noted in a discovery order that the complaint "does not sufficiently allege that [Innovations] seeks damages for a 10-year period to put [City Health's] income after 2021 at issue," Innovations purportedly amended the complaint to allege that the MSA included a 10-year term. City Health demurred, arguing that the breach of oral contract cause of action was unenforceable under the statute of frauds and that the breach of written contract cause of action was not supported by a written note or memorandum signed by real parties.

The trial court sustained the demurrer to the breach of contract claims with leave to amend. The court found that "the alleged oral 10-year contract falls within the statute of frauds" and directed Innovations "to further allege a factual foundation for the claim that [real parties] are estopped from asserting the statute of frauds." With respect to the breach of written contract claim, the court directed Innovations to "more specifically allege the existence of notes or memoranda that capture[ ] every essential term of the parties' agreement" as well as "a factual basis for concluding that the notes or memoranda were subscribed by Parkin." Finally, the court "overrule[d] the demurrer to the remaining causes of action without prejudice considering the Court's discussion concerning the breach of contract claims."

Innovations filed a SAC. As to estoppel, the SAC alleged that Innovations "provided substantial financial support and extensive services to [City Health]" and in doing so, "substantially changed their position to their detriment." As to the written notes or memoranda capturing the essential terms of the parties' agreement, the SAC alleged that the parties entered into a MSA during "the final quarter of 2018" that was "memorialized by various emails and other written communications by the parties." For both the

5

breach of oral contract and breach of written contract causes of action, the SAC sought damages, including Innovations' monthly management fee, "through the term of the MSA which is at least October 31, 2028."

City Health again demurred, arguing that the SAC failed to cure the defects previously identified by the trial court. The court agreed and sustained the demurrer to the breach of oral contract and breach of written contract claims (as well as three other related causes of action). In finding that Innovations failed to sufficiently allege estoppel, the court concluded that the SAC failed to "allege the existence of an unconscionable injury caused by a serious change in position in reliance of . . . the 10-year oral contract." It continued that the SAC failed to allege unjust enrichment as Innovations does not dispute that it was "fully compensated for their services between 2018 and 2020." The court further noted that the cause of action for quantum meruit was "an adequate remedy for any other sums claimed by [Innovations]." With respect to the breach of written contract claim, the court held that the SAC did not allege the existence of writings "that capture[d] every essential term of the parties' agreement, including (most notably) the 10-year term." Finally, the court denied Innovations leave to amend, finding that they were "unlikely to cure the defects . . . through further amendment."

Innovations filed a Verified Petition for Writ of Mandate (petition) and asked for a stay. We stayed all trial court proceedings and issued an order to show cause "why the relief requested in the petition should not be granted."

## II. **DISCUSSION**

A. Standard of Review

We review an order sustaining a demurrer de novo and exercise our independent judgment as to whether the complaint states a cause of action. (*Moore v. Regents of Univ. of Cal.* (1990) 51 Cal.3d 120, 125.) This extends

6

"even as to matters not expressly ruled upon by the trial court." (*Hayter Trucking, Inc. v. Shell Western E&P, Inc.* (1993) 18 Cal.App.4th 1, 13.) We accept as true all material facts properly pleaded and matters which may be judicially noticed but disregard contentions, deductions, or conclusions of fact or law. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

"When a demurrer is sustained without leave to amend, it is the duty of the reviewing court to decide whether there is a reasonable possibility that the defect can be cured by amendment. If it can, the trial court has abused its discretion and we must reverse. If it cannot be reasonably cured, there has been no abuse of discretion. [Citation.] It is the plaintiff's burden to show the reviewing court how the complaint can be amended to state a cause of action." (*Michaelian v. State Comp. Ins. Fund* (1996) 50 Cal.App.4th 1093, 1105.)

B. <u>Breach of Oral Contract</u>

Innovations contends that the trial court erred in finding that the statute of fraud barred its breach of oral contract cause of action based on the theories of completed performance and estoppel. We find that Innovations did not complete performance of the alleged oral agreement. But we also find that Innovations sufficiently alleged estoppel based on the unjust enrichment of City Health—which realized millions of dollars of profit in 2021 due to Innovations' efforts and services in 2021. We therefore grant the petition with respect to Innovations' challenge to the first cause of action for breach of oral contract.

1. *Statute of Frauds*

The statute of frauds provides that certain contracts "are invalid, unless they, or some note or memorandum thereof, are in writing and

7

subscribed by the party to be charged." (Civ. Code, § 1624, subd. (a).)[4]  One such contract is "[a]n agreement that by its terms is not to be performed within a year from the making thereof." (*Id.*, subd. (a)(1).)  Indeed, "[w]here any promise in a contract cannot be fully performed within a year from the time the contract is made, all promises in the contract are within the Statute of Frauds until one party to the contract completes his performance." (Rest.2d Contracts, § 130.)

Nonetheless, there are exceptions to this rule.  For example, once "one party to the contract completes his performance," the statute of frauds no longer applies.  (Rest.2d Contracts, § 130.)  Thus, "the one-year provision does not apply to a contract . . . which has been *fully* performed on one side, whether the performance is completed within a year or not." (*Id.*, com. d, italics added.)  However, "[p]art performance not amounting to full performance on one side does not in general take a contract out of the one-year provision." (*Id.*, com. e.)

"A party may [also] be estopped from asserting the statute of frauds as a defense to a contract in order to 'prevent fraud that would result from refusal to enforce [an] oral contract.'" (*Smyth v. Berman* (2019) 31 Cal.App.5th 183, 198.)  But "[b]efore estoppel applies, the party so pleading must allege that refusal to enforce the oral contract will result in (1) 'unconscionable injury' because the party pleading estoppel 'seriously . . . change[d] [its] position in reliance on the [oral] contract,' or (2) the 'unjust enrichment' of the party pleading the statute of frauds as a defense because that party 'received the benefits of the other's performance.'" (*Ibid.*)

---

[4] All further statutory references are to the Civil Code unless otherwise specified.

## 2. *Performance of the Contract*

Innovations contend that the statute of frauds does not bar their breach of oral contract claim because they "fully executed" "portions of the oral agreement." The SAC, however, alleges that the parties entered into the oral MSA in "the final quarter of 2018" and that "[t]he MSA included an initial *term of ten years* from November 1, 2018." (Italics added.) Consistent with these allegations, the SAC sought as damages for breach of the oral contract Innovations' monthly management fee and a percentage of City Health's "net revenue *through . . . at least October 31, 2028*." (Italics added.) Thus, at the time real parties terminated the MSA in March 2021—less than three years into the 10-year oral contract—Innovations had only partially performed their contractual obligations. Their claim for breach of an oral contract is therefore barred by the statute of frauds. (*Zakk v. Diesel* (2019) 33 Cal.App.5th 431, 454 [commenting that a five-year oral contract that was terminated after three years "involved partial, rather than full, performance"].)

Innovations counter that their "performance *was* completed based on [real parties'] understanding that the [MSA] could be, and was, terminated." Although this argument is less than clear, Innovations appear to contend that their performance should be deemed complete as of real parties' termination of the MSA. This contention, however, is belied by the allegation in the SAC that Innovations are entitled to damages for breach of oral contract through 2028—the remaining term of the MSA—even though real parties terminated the MSA in March 2021. In any event, accepting Innovations' contention would, as a practical matter, nullify the one-year provision of the statute of frauds. If a contract is established every time a party terminates a contract after a year of performance, then no oral contract

9

that could not be completed within a year would be barred by the statute of frauds.

In their reply, Innovations argue that "the SAC did not allege that the parties' oral agreement had a 10-year term" to support their contention of completed performance. According to a footnote later in the reply, "the SAC was not intended to allege . . . a 10-year term" even though Innovations "stand by the factual allegations in the SAC." We disregard this conclusory and somewhat contradictory argument as it is not supported by adequate legal reasoning or any citations to the record. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287.) In any event, the allegations in the SAC speak for themselves and state that the MSA, which "*reflect[s]" the parties'* " '*current verbal agreement*,' " included "an initial term of ten years from November 1, 2018." (Italics added.) And if any doubts remain over the length of the term of the oral agreement, the allegation in the SAC seeking damages "through *the term of the MSA which is at least October 31, 2028*" for breach of the oral MSA dispels them. (Italics added.) Because "we do not go beyond the four corners of the complaint" in reviewing an order sustaining a demurrer (*Thorburn v. Dept. of Corrections* (1998) 66 Cal.App.4th 1284, 1287–1288), we reject Innovations' attempt to rewrite the SAC.

### 3. *Estoppel*

Innovations next contend that real parties are estopped from asserting the statute of frauds because they sufficiently alleged that the failure to enforce the oral contract would result in unconscionable injury to Innovations and unjust enrichment of real parties. We agree that the SAC adequately alleged that real parties would be unjustly enriched if the oral MSA is not enforced during the portion of 2021 when Innovations was still providing services to City Health. Real parties are therefore estopped from asserting

10

the statute of frauds as a defense to any oral agreement that covered the services that Innovations did provide to City Health in 2021.[5]

Unjust enrichment is an equitable principle premised "on the idea that 'one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made.' " (*County of San Bernardino v. Walsh* (2007) 158 Cal.App.4th 533, 542.)

We find that the SAC sufficiently alleged that real parties were unjustly enriched by the efforts and services provided by Innovations in 2021. According to the SAC, "due to the built-out COVID testing and [Innovations'] associated substantial efforts," City Health "realized over $27.2 million in gross profit and approximately $15.2 million in net income for the first two quarters of 2021." The SAC further alleged that real parties "refus[ed] to reimburse [Innovations] for the services [Innovations] rendered in the manner the parties agreed," "including all the services rendered during 2021." Finally, the SAC's breach of oral contract claim seeks damages for "all services [Innovations] provided during 2021." Because the SAC expressly alleged that real parties benefitted from the services provided by Innovations during 2021 without "appropriately" reimbursing Innovations for those services, it has sufficiently alleged unjust enrichment.

Real parties counter that the claim for breach of oral contract is unnecessary because the remaining claim for quantum meruit "will allow

---

[5] Because a general demurrer does not lie to only part of a cause of action (*PH II, Inc. v. Superior Court* (1995) 33 Cal.App.4th 1680, 1682–1683 (*PH II*)), we express no opinion as to whether real parties were unjustly enriched after Innovations stopped providing services to City Health in 2021 or whether Innovations sufficiently alleged an unconscionable injury.

11

[Innovations] to recover whatever sum is owed for the 78 days in 2021 during which they provided services to City Health." But an action in quantum meruit only "permits the recovery of the *reasonable value* of services rendered." (*Pacific Bay Recovery, Inc. v. Cal. Physicians' Services, Inc.* (2017) 12 Cal.App.5th 200, 214, italics added.) And the "[c]ontract price and the reasonable value of services rendered are two separate things; sometimes the reasonable value of services exceeds a contract price. [Citation.] And sometimes it does not." (*Maglica v. Maglica* (1998) 66 Cal.App.4th 442, 450 (*Maglica*).) Although courts "*may* consider the price agreed upon by the parties 'as a criterion in ascertaining the reasonable value of services performed' " (*Watson v. Wood Dimension, Inc.* (1989) 209 Cal.App.3d 1359, 1365, italics added), that price does not automatically determine that value.

Thus, contrary to the assertion of real parties, the quantum meruit claim may *not* allow Innovations to recover the amount owed to Innovations under the terms of the oral MSA. Even though the SAC alleges that the amount owed to Innovations under the oral MSA "reflects the fair market value of the services provided by Plaintiffs," the trier of fact may conclude otherwise. (See *Maglica*, *supra*, 66 Cal.App.4th at pp. 450–451.)

Indeed, based on the allegations of the SAC, it seems more than possible that a trier of fact would find that the amount owed under the oral MSA exceeds the reasonable value of Innovations' services. According to the SAC, City Health realized a net profit of "approximately $15.2 million . . . for the first two quarters of 2021." Under the terms of the oral MSA as alleged in the SAC, Innovations would conservatively be entitled to over $2 million for its services in 2021. This far exceeds the $785,400 that real parties paid Innovations in 2020. Because real parties have "refus[ed] to reimburse [Innovations] for the services [Innovations] rendered [in 2021] in the manner

12

the parties agreed" under the MSA, we may reasonably infer that real parties themselves do not believe that the contracted amount represents the reasonable value of Innovations' services in 2021. (*Regents of Univ. of Cal. v. Superior Court* (2013) 220 Cal.App.4th 549, 558 [in reviewing a demurrer order, "[w]e assume the truth of . . . facts that reasonably can be inferred from those expressly pleaded"].) Accordingly, the quantum meruit claim may not prevent the unjust enrichment of real parties in the absence of the breach of oral contract claim.

*Ruinello v. Murray* (1951) 36 Cal.2d 687 (*Ruinello*), a case real parties rely on, is distinguishable. There, the plaintiff was employed as a superintendent of the defendant's building pursuant to an oral contract that included a five-year term and a $350 monthly salary. (*Id.* at p. 688.) The defendant discharged the plaintiff after only two years, and the plaintiff sought recovery of the salary he would have been entitled to for the remainder of the contract term, plus a percentage of the building's yearly gross profits as promised under the contract. (*Ibid.*) The defendant successfully demurred based on the statute of frauds. (*Id.* at p. 689.)

The California Supreme Court affirmed, concluding that the plaintiff failed to allege unjust enrichment sufficient to support estoppel. (*Ruinello, supra,* 36 Cal.2d at p. 690.) It reasoned that "[a]lthough [the] plaintiff alleges that the gross income of [the] defendant's building was substantially increased as a result of his efforts, he does not allege that the reasonable value of his services was greater than the $350 a month he was paid while working for defendant." (*Ibid.*) And if "the salary [the plaintiff] received under the oral contract was not the equivalent of the reasonable value of his services, an action in quantum meruit for that value would prevent any unjust enrichment of [the] defendant." (*Ibid.*, italics omitted.)

13

Here, unlike the defendant in *Ruinello* who paid the plaintiff the contracted amount for services he already provided, real parties have not paid Innovations the contracted amount for services already provided by Innovations in 2021. As a result, we may reasonably infer that real parties, unlike the defendant in *Ruinello*, dispute that the amount owed under the oral MSA represents the reasonable value of Innovations' services in 2021. Thus, Innovations may recover less than the contracted amount under their quantum meruit claim.[6] As a result, we cannot conclude that Innovations' recovery under the quantum meruit claim necessarily subsumes their recovery under the breach of oral contract claim.

Accordingly, we find that the SAC sufficiently alleges estoppel based on unjust enrichment for the services rendered by Innovations in 2021. And for this reason alone, the demurrer to the breach of oral contract claim should have been overruled. (See *PH II*, *supra*, 33 Cal.App.4th at pp. 1682–1683 [demurrer does not lie to part of a cause of action].)

C. Breach of Written Contract

Innovations next argue that the trial court erred by sustaining the demurrer to their breach of written contract cause of action. According to Innovations, the SAC sufficiently alleges that the MSA was memorialized by

---

[6] We note that the SAC alleged that the MSA required that Innovations "provide" more than just "management services to [City Health] in exchange for [its] return on its investment and payment for its management services." Instead, it also alleged that the MSA required that Innovations "invest in [City Health]"—which Innovations did in the form of "more than $700,000 of working capital, equipment purchases, rents, construction related costs, and loan payoffs." Thus, based on the allegations in the SAC, the amount owed under the oral MSA may be greater than the reasonable value of Innovations' services.

14

a series of written statements that were subscribed by Parkin and that contained the essential terms of the parties' agreement.  We disagree.

"The statute of frauds does not require a written contract . . . ." (*Sterling v. Taylor* (2007) 40 Cal.4th 757, 765.)  Instead, "a 'note or memorandum . . . subscribed by the party to be charged' is adequate."  (*Ibid*.)

Nonetheless, the note or memorandum must identify "the subject of the parties' agreement, show[ ] that they made a contract, and *state[ ] the essential contract terms with reasonable certainty*."  (*Sterling v. Taylor, supra*, 40 Cal.4th at p. 766, italics added.)  And to subscribe to that note or memorandum means " 'to attest or give consent or evidence knowledge by underwriting, usually (but not necessarily) the name of the subscriber.' " (*Weiner v. Mullaney* (1943) 59 Cal.App.2d 620, 634.)  In other words, there must be some signatory " ' "mark upon" ' " the note or memorandum " ' "in token of knowledge, approval, acceptance, or obligation." ' "  (*Ibid*.)  Although "subscription does not require that the signature appear at the end of the instrument, nor that it be handwritten," the signatory mark must be "*intended* as a signature, i.e., as an authentication . . . ."  (*Rader Co. v. Stone* (1986) 178 Cal.App.3d 10, 23.)  But a signatory mark "for some other purpose, as for mere identification," is not enough.  (*Ibid*.)

Here, the SAC does not identify a note or memorandum subscribed by real parties that states an essential term of the parties' agreement:  the 10-year term.

First, based on the allegation of the SAC, the 10-year term is undoubtedly an essential term of any written contact between the parties. (See Rest.2d Contracts, § 131, com. g ["What is essential depends on . . . the subsequent conduct of the parties, including the dispute which arises and the remedy sought"].)  The SAC expressly alleged that the MSA "included an

15

initial term of ten years" and sought damages for this 10-year period due to real parties' alleged breach of the written MSA. Given these allegations, the 10-year team must be essential.

Second, the 10-year term is not included in any writing subscribed by real parties. The written statements from 2018 alleged in the SAC only discussed the ownership structure of the MSO and the pro rata profit distribution and confirmed that Innovations "were acting as [City Health's] MSO." The statements do not mention a 10-year term. Putting aside the issue of whether Parkin subscribed to all the terms identified in the 2018 e-mails, the omission of the 10-year term precludes any finding of a written contract based on those e-mails.

The parties' exchange of a draft MSA in mid-2020 does not compel a contrary conclusion. Although that draft included a 10-year term, Innovations conceded that it "was never finalized." Even if the draft MSA did "reflect[ ] the [parties'] 'current verbal agreement,' " the SAC does not sufficiently allege that real parties subscribed to the draft MSA itself. For example, the SAC does not allege that real parties signed the draft MSA or placed any form of signatory mark on the draft MSA indicating their approval or acceptance. Indeed, the SAC does not even allege that real parties agreed to the terms of the draft MSA. Instead, the SAC only alleged that Parkin "returned the MSA . . . 'with a few comments' but no changes to the key terms of the" draft MSA. This allegation is insufficient to establish that real parties subscribed to the draft MSA, much less agreed to it. To hold otherwise would mean that a party would be bound to any essential term in a draft document to which it did not object, even if a final agreement is never reached. Accordingly, we conclude that the trial court properly sustained the demurrer to the breach of written contract cause of action.

16

D. Related Causes of Action

Real parties contend that the trial court properly sustained the demurrer to the causes of action for breach of implied covenant of good faith and fair dealing and declaratory relief solely because the causes of action for breach of contract were not viable. We must therefore grant the petition as to those two causes of action because we conclude that the demurrer to the cause of action for breach of oral contract should have been overruled. (See *PH II*, *supra*, 33 Cal.App.4th at pp. 1682–1683 [demurrer does not lie to part of a cause of action].)

We also grant the petition as to the cause of action for an accounting. As explained above, Innovations may seek recovery of a percentage of City Health's net revenue in 2021 under its breach of oral contract claim. Because the SAC alleges that the exact amount of City Heath's revenues and profits in 2021 is unknown and "cannot be ascertained without an accounting of [its] revenue and expenses," we find that Innovations has stated a cause of action for accounting. (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179 [an action for accounting requires "that some balance is due [to] plaintiff that can only be ascertained by an accounting"].)

E. Leave to Amend

Lastly, Innovations contend that the trial court erred by denying them leave to amend. Since we only deny the petition as to the breach of written contract claim, we only consider whether the court abused its discretion in denying leave to amend that claim and conclude that it did not.

Although there is a strong policy favoring amendments, "leave to amend should *not* be granted where, in all probability, amendment would be futile." (*Vaillette v. Fireman's Fund Ins. Co.* (1993) 18 Cal.App.4th 680, 685.) "The plaintiff bears the burden of proving there is a reasonable possibility of

17

amendment" and "may make this showing for the first time on appeal." (*Rakestraw v. Cal. Physicians' Service* (2000) 81 Cal.App.4th 39, 43.) But he " 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' " (*Ibid*.) This includes setting forth specific factual allegations that are "not vague or conclusionary." (*Id*. at p. 44.)

With respect to the breach of written contract claim, the trial court instructed Innovations to "more specifically allege the existence of notes or memoranda that capture[ ] every essential term of the parties' agreement," including the 10-year term, and that those notes or memoranda were "subscribed by Parkin." Innovations, however, failed to identify any notes or memoranda containing the 10-year term that were subscribed by real parties. Innovations now contend that it "could have amended to add additional facts regarding the communications confirming the contractual relationship, including specific statements made in writing by [real parties]." But Innovations does not identify those facts or explain what those statements were, much less how they would establish that real parties subscribed to any writing containing the 10-year term. Under these circumstances, the court did not abuse its discretion by denying Innovations leave to amend their breach of written contract claim.

### III.  DISPOSITION

The petition is denied to the extent it challenges respondent trial court's order sustaining the demurrer to the breach of written contract cause of action. As for the remainder of the petition, let a peremptory writ of mandate issue directing the court to vacate its September 3, 2025 order sustaining the demurrer without leave to amend as to the first cause of action for breach of oral contract, third cause of action for breach of implied

18

covenant of good faith and fair dealing, sixth cause of action for accounting, and seventh cause of action for declaratory relief.  The previously issued stay shall dissolve upon issuance of the remittitur.  Each party shall bear their own costs.  (Cal. Rules of Court, rule 8.493(a)(1)(A).)


CHOU, J.


We concur.

JACKSON, P. J.
BURNS, J.

19