Filed 5/15/26  Estate of Beilman CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| Estate of RONALD KENT BEILMAN,<br><br>    Deceased.<br><br>KEVIN TODD DANIEL,<br><br>    Petitioner and Appellant,<br><br>      v.<br><br>ORANGE COUNTY DISTRICT ATTORNEY, as Public Administrator, etc., et al.,<br><br>    Objectors and Respondents. | G065860<br><br>(Super. Ct. No. 30-2023-01309472)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Ebrahim Baytieh, Judge. Affirmed.

Ward & Thorn and Richard D. Thorn for Plaintiff and Appellant.

Leon J. Page, County Counsel, and D. Kevin Dunn, Deputy County Counsel, for Objector and Respondent Orange County District Attorney, as Public Administrator (Public Administrator).

Bunt & Shaver and David N. Shaver for Objector and Respondent Robin Johnson.

*          *          *

Kevin Todd Daniel appeals a final order after trial denying his claim that he is the rightful owner of real property based on an agreement he made with Ronald Kent Beilman (decedent). Daniel argues there is substantial evidence to support the enforceability of the agreement, that it satisfies the requirements of the statute of frauds, or alternatively his performance of his obligations under the agreement negates the statute of frauds requirements. He further contests the trial court's credibility determinations and asserts the court was biased. We disagree on all points.

Substantial evidence supports the trial court's finding that the writings produced by Daniel do not qualify as memoranda to satisfy the statute of frauds because the terms are not certain and because there are questions as to their validity. Additionally, there is substantial evidence to support the court's finding that Daniel did not fully perform his side of the agreement, and any partial performance is not sufficient to eliminate the statute of frauds requirements. Finally, we conclude there is no evidence the court was biased against Daniel or its credibility determinations were arbitrary or unreasonable. We therefore affirm the judgment.

FACTUAL AND PROCEDURAL HISTORY

The real property in question consists of two parcels of land on which there was a manufactured home in Redlands, California (Redlands Property). The Redlands Property had previously been owned by a trust to

2

which decedent was a beneficiary. When decedent's mother died, decedent inherited the Redlands Property and transferred it from his name as the successor trustee of his mother's trust to his individual name.

Daniel alleged he entered into an agreement with decedent to purchase the Redlands Property, but decedent passed away before the property could be transferred to Daniel. In September 2023, following decedent's death, Daniel filed a petition pursuant to Probate Code section 850 seeking an order declaring him the owner of the Redlands Property. Shortly thereafter, Robin Johnson, a first cousin of decedent, filed a petition for determination of entitlement to estate distribution pursuant to Probate Code section 11700; Johnson's petition was approved by the court in January 2024. Both the Public Administrator and Johnson challenged Daniel's Probate Code section 850 petition.

Daniel testified at trial, along with two other witnesses; he also offered several documents as exhibits. There are two key exhibits at issue. The first is exhibit 52 (the ledger), which he claims is a handwritten list of payments made toward the purchase of the Redlands Property beginning in November of 2016 and going through October of 2020. The ledger title indicates: "Rent for ranch to buy or mor[t]gage from Kevin Todd Daniel." The ledger also includes the address for the Redlands Property and shows only 48 payments in the amount of $400, amounting to $19,200.

The second key exhibit is exhibit 53 (acknowledgment), which is a written statement that decedent "sold [his] property to Kevin Todd Daniel for the sum of $20,000." The acknowledgment dated December 2, 2020, includes the address of the Redlands Property and purports to be signed by both decedent and Daniel's mother, Rita.

Daniel testified Rita began dating decedent when Daniel was 22 or 23 years old, and he and decedent treated each other as father and son. Decedent did not live at the Redlands Property, and around 2012, he asked Daniel to help take care of it because people were breaking in.

According to Daniel, in 2015, he and decedent discussed entering into a payment plan for Daniel to purchase the Redlands Property. They eventually agreed that Daniel would make 50 monthly payments of $400 each and he would assume responsibility for paying the utilities and taxes on the property. Daniel testified he began making the monthly payments in late 2015. However, the ledger indicates payments began in November of 2016. Payments were mostly made by Daniel mailing a money order to decedent. Daniel kept the receipt portions of the money orders he sent. During this time, decedent continued to pay the utilities and taxes, but Daniel testified he would reimburse decedent for these property related costs. Daniel testified the money orders he sent included these costs.

When asked if there was a written contract for the sale of the Redlands Property, Daniel testified, "Not that I know of." He also could not recall signing a written contract. However, when asked if he believed there was a contract between him and decedent, Daniel responded, "I do . . . it wasn't a big sale or realty company or anything. It was just me and my dad." He testified he thought the ledger (exhibit 52) was their contract. Daniel further testified he was present when decedent and Rita signed the acknowledgment to show that Daniel had finished paying the $20,000 purchase price.

Christopher Drury testified he had lived next door to the Redlands Property for the past 11 years and was Daniel's friend. Drury testified he knew decedent as Daniel's stepfather. He further testified Daniel

4

told him he was paying the bills related to the Redlands Property and indicated he had seen receipts or money orders for such payments. Drury also testified decedent told him he had sold the property to Daniel.

Lee Benavidez testified he was decedent's friend for 52 years. Benavidez testified Daniel's mother was in a relationship with decedent for more than 20 years, and that Daniel was like a son to decedent. Benavidez testified decedent initially offered to sell him the Redlands Property, but he had declined. Decedent later told Benavidez he sold the Redlands Property to Daniel. Benavidez testified he is familiar with and recognizes decedent's handwriting. He testified decedent wrote most of the ledger, but he was unsure about lines 29–36. Benavidez also confirmed that decedent wrote the words "Rent for ranch to buy or mor[t]gage from Kevin Todd Daniel" at the top of the ledger.

As for the acknowledgment, Benavidez testified the upper-case printing was definitely written by decedent, but he could not confirm whether the cursive signature belonged to decedent. Benavidez did testify, however, that decedent told him Daniel had paid $20,000 for the property.

After trial, the parties submitted written closing briefs. The trial court issued a tentative ruling, giving the parties an opportunity to file any objections or requests for clarification. No objections were filed, and the court issued a detailed final statement of decision denying Daniel's petition. The statement of decision discussed the written and testimonial evidence in detail. The court found Daniel's testimony lacked "probative credibility," was mostly self-serving, and was inconsistent with other credible evidence. The court similarly found Drury's testimony to lack credibility, but found Benavidez's testimony was credible.

Trial exhibits 13–27 were notes and envelopes Daniel asserted he mailed to decedent with money orders over a period of several years. The court commented the notes all seemed to be the exact same size and appeared to have been ripped out of the same notepad. Moreover, the notes would not fit in the corresponding envelope without being folded, but most of the notes did not appear to the naked eye to show signs of having been folded, giving rise to a reasonable inference that they were not mailed in the envelopes over time, but were either created or assembled sometime later.

The trial court observed that the term "RENT" and the words "OR MOR[T]GAGE" are in an unusual location on the ledger, and to the naked eye, they do not seem to be in the same handwriting as the rest of the title. The acknowledgment has similar problems. The court observed the cursive writing of "Redlands CA 92373" on the acknowledgment does not appear to be consistent with the handwriting in which the remainder of the address was written. Also, comparing the signature of decedent on the acknowledgment to his signature from a prior legal document, the two signatures did not match. Given that Benevidez could not confirm whether it was actually decedent's signature on the acknowledgment, the court was not convinced decedent had signed the document.

The trial court found the alleged agreement between Daniel and decedent did not satisfy the statute of frauds. Accordingly, Daniel's petition was denied, and the court ordered administration of the estate to be completed accordingly. Daniel filed a timely appeal.

DISCUSSION

Daniel argues, in essence, that there is substantial evidence he entered into an agreement with decedent to purchase the Redlands Property and that agreement is enforceable under the statute of frauds. Daniel's

6

arguments depend upon a finding the trial court is biased and unfairly found his testimony and evidence lacked credibility. We disagree and conclude the court had substantial evidence to find that the evidence produced by Daniel was insufficient to establish the requirements of the statute of frauds. Moreover, we conclude there is no credible evidence of judicial bias or any impropriety in the court's actions or findings.

## I.

### STANDARD OF REVIEW AND BURDEN OF PROOF

"We apply well-established standards of review to a judgment based upon a statement of decision issued after a bench trial. [Citation.] We review questions of law de novo and we review the trial court's findings of fact under the substantial evidence standard." (*Gajanan Inc. v. City and County of San Francisco* (2022) 77 Cal.App.5th 780, 791–792.) Substantial evidence is not just any evidence arguably tending to support a trial court's findings. The evidence must be reasonable in nature, credible, and of solid value. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873.) Substantial evidence "'inspires confidence that the ultimate fact it addresses has been justly determined.'" (*People v. Lehman* (2016) 247 Cal.App.4th 795, 804.)

## II.

### THE TRIAL COURT'S CREDIBILITY FINDINGS

Daniel argues the court improperly found testimony was not credible. Appellate courts are generally "'bound by the trial court's credibility determinations.'" (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 94.) Unless a trial court's credibility determinations are "arbitrary or unreasonable," the appellate court must defer to them. (*Shapell SoCal Rental Properties, LLC v. Chico's FAS, Inc.* (2022) 85 Cal.App.5th 198, 218.) Rational grounds for disbelieving a witness include the factors listed in Evidence Code

section 780, such as the witness's demeanor (subd. (a)); the witness's interest in the matter (subd. (f)); the consistency of the witness's statements with other testimony they offer (subds. (g) & (h)); and the witness's attitude. (subd. (j).)

The trial court found Drury's testimony was not "credibly probative," and found Daniel's testimony was "mostly self-serving and at times inconsistent with other credible evidence introduced during the trial, including internal inconsistencies in his testimony, as well as inconsistencies between his testimony when compared with exhibits 52 and 53 regarding the timing of events, the numbering of payments, and when the actual performance on the purported oral contract actually started." The court's determinations on witness credibility rested on its observations of their "demeanor, tone of voice, and body language." The court based its credibility determinations on the factors listed in Evidence Code section 780.

Daniel argues even if the court found testimony lacking in credibility, "[t]hose findings do not create evidence of the opposite of the testimony given under oath." We agree "[t]he rejection of a witness's testimony by the trier of fact has only the effect of removing that testimony from the evidentiary mix." (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1205.) However, this does not help Daniel, who argues this results in a lack of evidence that "the contract was a fraud perpetrated by [Daniel]." Daniel further asserts there is no evidence that "payment in full was not made" or that he "did not pay taxes, utilities and home registration for the Property."

This conclusory argument misunderstands the burden of proof in this case. It was Daniel who had the burden of proving an enforceable agreement existed "in writing to convey real property." (Prob. Code, § 850,

subd. (a)(2)(A).) In response to Daniel's petition, the Public Administrator disputed there was a written contract between Daniel and decedent for the sale of the Redlands Property and asked the court to determine whether there is "sufficient proof" establishing a "written contract." Johnson submitted a petition asking the court to "determine the nature and character of the property contained in the decedent's estate," which would include a determination as to ownership of the Redlands Property.

Neither the Public Administrator nor Johnson had the burden to prove the property was never sold to Daniel or that Daniel committed fraud. It was Daniel's burden to prove a written agreement existed for the sale of the Redlands Property to him, and "the decedent, if living, could have been compelled to make the conveyance." (Prob. Code, § 850, subd. (a)(2)(A).) On appeal, Daniel does not dispute that the statute of frauds generally applies, or that his petition depended on him establishing the existence of a written contract for the purchase of the Redlands Property. He only asserts there is substantial evidence that the statute of frauds requirements have been satisfied by way of the memoranda he introduced as evidence, and by way of his full or partial performance.

Excluding the testimony that the trial court found lacking in credibility does not help Daniel establish the existence of that written agreement. In fact, it does the opposite, because Daniel cannot meet his burden of proof.

Daniel also argues on appeal "veracity judgments based on non-verbal clues are accurate half the time whether the observer is a lay person or a presumed lie expert. They are no better than chance. These clues have been likened to medieval truth-finding concepts such as trial by ordeal." In support of this assertion, Daniel cites to an article about the use of nonverbal

9

communication when assessing witness credibility. Regardless of the article's information, the factors a court should use in determining witness credibility were set forth by the Legislature in Evidence Code section 780, which the trial court used to determine credibility. A psychology article, even if peer-reviewed, cannot overcome the Evidence Code. Daniel does not address the factors in section 780, and we find nothing in the record to render the court's assessment unreasonable or arbitrary. We will, therefore, defer to the court's findings on witness credibility.[1]

## III.

### STATUTE OF FRAUDS

Daniel filed a petition pursuant to Probate Code section 850 seeking an order declaring him the owner of the Redlands Property. Under that statute, Daniel was required to establish decedent, while living, was "bound by a contract in writing to convey real property . . . and die[d] before making the conveyance." This includes proving "the decedent, if living, could have been compelled to make the conveyance." (Prob. Code, § 850, subd. (a)(2)(A).)

---

[1] Daniel also asserts the trial court was biased against him based on his courtroom behavior, and because the judge is a former prosecutor who knew Daniel had previously been convicted of a crime. The record does include admonitions from the court to Daniel based on him talking in court and disrupting proceedings. Controlling courtroom proceedings is not evidence of judicial bias. Courtroom control is required. (Cal. Code Judicial Ethics, canon 3B(3).) The assumption the trial judge is biased simply because he is a former prosecutor is speculation and conjecture. Moreover, we cannot find any objection or argument of judicial bias at the trial court level. Indeed, when given the opportunity to object to the court's tentative statement of decision, Daniel did not file an objection. Failure to raise this issue before the trial court constitutes forfeiture. (*People v. Fuiava* (2012) 53 Cal.4th 622, 731–732.)

Daniel's petition initially argues there was a written agreement in the form of "correspondence" admitted as exhibits 13–27 at trial, and the ledger and acknowledgment admitted as exhibits 52 and 53 at trial, respectively. The petition asserts Daniel "has fully performed all the terms and conditions of the contract," the "terms of the contract are sufficiently definite and certain for enforcement," and "[d]ecedent had already received full consideration at the time of his death."

The agreement Daniel seeks to enforce was to be performed over a period of more than a year. The agreement is also a real property sales contract. (Civ. Code, § 2985; Bus. & Prof. Code, § 10029.) Based on these two criteria, the statute of frauds applies. (Civ. Code, § 1624, subd. (a)(1) & (3).) Accordingly, the agreement is not valid unless it is in writing. (*Id.,* subd. (a)(3).)

The statute of frauds ""was intended to guard against the perils of perjury and error in the spoken word."" (*Sterling v. Taylor* (2007) 40 Cal.4th 757, 771 (*Sterling*).) The statute's purpose is "'evidentiary, to require reliable evidence of the existence and terms of the contract and to prevent enforcement through fraud or perjury.'" (*Id.* at p. 766.)

A.      *Specificity of Terms*

The statute of frauds does not require the parties to execute a full written contract. A "note or memorandum" is adequate to satisfy the statute's requirements. (Civ. Code, § 1624, subd. (a); *Sterling, supra,* 40 Cal.4th at p. 765.) The memorandum is "merely evidence of" the agreement and usually does not contain all its terms. (*Id.* at pp. 765–766.) However, the memorandum must include the contract's essential terms. (*Id.* at p. 771.) Extrinsic evidence can be used to resolve any ambiguities in the contract

11

terms (*id.* at p. 770), but it cannot be used to supplement or establish essential terms (*id.* at p. 771).

Daniel argues that the ledger and acknowledgement include all the terms of the agreement and together they qualify as memoranda which satisfy the statute of frauds. The acknowledgement states decedent "sold" the property to Daniel "for the sum of $20,000." The acknowledgement also includes the address of the Redlands Property and appears to be signed by decedent. The ledger shows the payments made and also has the property's address, as well as the term "mor[t]gage" in the title.

While generally a property address is specific enough for a memorandum to satisfy the statute of frauds, the court found it was not specific enough in this case, because the Redlands Property consists of two parcels of land, and the mobile home on them. The memoranda did not confirm whether the agreement was for one parcel, two parcels, just the mobile home, or all three. Further, the court found the documents themselves to be unreliable. The ledger says both "rent" and "mor[t]gage," making the document itself ambiguous. Additionally, the two documents are not solely in decedent's handwriting, and there was no evidence about who else wrote on them, whether that writing was done with decedent's knowledge and permission, and when that writing was done.

Daniel argues the trial court should have used extrinsic evidence to clarify any dispute in the meaning of the property to be conveyed, pursuant to *Sterling, supra,* 40 Cal.4th at page 767. Specifically, Daniel argues a quitclaim deed transferring ownership to decedent after his mother's death, entered as exhibit 2 at trial, includes a specific description of the property, which the court could have used to resolve the ambiguity. Daniel also points to various portions of his testimony, such as his desire for

12

a fixed address and the relationship between the parties, as evidence that would resolve any potential ambiguity. The court found Daniel's and Drury's testimony to lack credibility, so their testimony cannot be the clarifying extrinsic evidence Daniel presumes them to be.

Substantial evidence supports the trial court's finding that the contract terms are too ambiguous to enforce. A property description on a deed previously conveying the property is not evidence decedent intended to transfer the same described property to Daniel. Additionally, there is ambiguity as to the date the agreement was formed, when performance was to be completed, and whether it was completed. The acknowledgement is dated December 2020, but the ledger indicates payments began in November of 2016. Making things more confusing, Daniel testified he began making payments in late 2015, but even if he was wrong about that date, he had been making payments for five years. Moreover, Daniel testified decedent told him that he would only own the property once he finished making payments to decedent. Even if the court had found Daniel's testimony credible, it does nothing but add confusion and more ambiguity to the terms of the agreement.

The trial court found Daniel "failed to meet his burden of demonstrating with reasonable certainty the terms that he is claiming the Decedent agreed upon." We agree.

B.    *Partial / Complete Performance*

Daniel argues that full or partial performance of his obligations under the contract's terms entitles him to ownership of the property even if the statute of frauds is not satisfied by the terms of the memoranda he submitted.

When a party performs his or her obligations under an agreement, the other party can be estopped from contesting enforcement

based on the statute of frauds. (*Secrest v. Security National Mortgage Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 556.) However, that principle is "limited to the situation where performance consist[s] of conveying property, rendering personal services, or doing something other than payment of money." (*Ibid.*) The idea is that the enforcing party must change his position so much "that the application of the statutory bar would result in an unjust and unconscionable loss." (*Anderson v. Stansbury* (1952) 38 Cal.2d 707, 715.) When a party has lost only money, he has an adequate remedy at law to recover those funds. (*Id.* at p. 716.) If the buyer, in addition to paying the money, makes, for example, valuable and substantial improvements to the property in reliance on the agreement, performance may be an exception to the statute of frauds. (*Sutton v. Warner* (1993) 12 Cal.App.4th 415, 422 (*Sutton*).)

Daniel argues he fully performed the terms of the agreement because he paid the full $20,000. However, the evidence does not bear this out. The acknowledgement indicates the full $20,000 was paid, but the ledger does not confirm the last two payments were made. Daniel claims he made payments in early 2021, after the date of the acknowledgment in December 2020. The trial court was "not satisfied by a preponderance of the evidence that there was ever full performance." Substantial evidence supports the court's finding.

Even if Daniel had paid the full $20,000, it would not be enough to avoid the statute of frauds. (*Sutton, supra,* 12 Cal.App.4th at p. 422.) However, Daniel argues that he did more than just pay money. He testified he took possession of the Redlands Property in 2012, prior to his agreement to purchase it, and he improved the property by making repairs after break-ins, painting it, and handling yard work. He used his own funds for the

14

improvements. Daniel testified he continued to live on the property after making the agreement with decedent. Even if this testimony was credible, it merely shows Daniel's possession and the improvements he made to the property took place before the agreement was contemplated. Daniel did not change his position or invest his time and money in furtherance of the agreement. He did it before there was a purported agreement.

The trial court found, after considering the memoranda offered by Daniel, in the context of the extrinsic evidence Daniel offered, the witness credibility issues, and the conflicts in the evidence, there remained "a degree of doubt that the statute of frauds does not, and should not, tolerate." We agree. Daniel did not meet his burden of offering admissible evidence of an agreement certain enough in its terms to ensure the tenets of the statute of frauds were met.

## DISPOSITION

The judgment is affirmed. Respondents to recover costs on appeal.


BANCROFT, J.*

WE CONCUR:


SANCHEZ, ACTING P. J.


DELANEY, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15